D. E. H. GRIMMELMAN, Administrator of the Estate of
  WILLIAM R. GRIMMELMAN, Deceased, v. THE
  UNION PACIFIC RAILWAY COMPANY, S. H. H.
  CLARK, OLIVER W. MINK, E. ELLERY ANDERSON,
  JOHN W. DOANE, and FREDERICK R. COUDERT,
  Receivers, Appellants.

**Negligence:** DANGEROUS PREMISES: *Court and Jury.* Deceased was
  employed as an engine wiper at defendant's roundhouse, and, on
  a dark night, was ordered to assist the turntable pit gang at the
  clinker pit. Seeing that gang at turntable, he went there. On
  his way to the turntable, he fell into a pit of boiling water dis-
  charged from the engines. The pit was caused by a break in
  a sewer used for carrying off such water, and a ditch had been
  dug along such sewer up to the pit. Deceased knew of the
  ditch, but did not know of the pit. There was no guard around
  it, but a red light was burning about five feet from the plcea
  where deceased fell in. *Held,* that contributory negligence was a
  jury question.

**PRESUMPTIONS:** *Warning.* In an action for the death of a servant,
  no presumption arises that he was warned of the danger, from
  the absence of evidence that he was not warned.

**ELEMENTS OF DAMAGE:** *Former occupation.* In an action for the
  death of an engine wiper employed by defendant, evidence that
  before he worked for defendant he had been a plasterer, and that
  the average wages of plasterers at the time of his death was four
  dollars per day, was admissible.

**Interrogatories to Jury:** FORM. The submission to the jury of an
  interrogatory which may be construed to contain two questions,
  either of which may be answered by yes or no, is not cause for
  reversal, where it was not in fact misleading, and it is apparent
  from the answer returned thereto that the jury fully understood
  its import and intended to answer both phases of the question,
  especially, where the interrogatories are not decisive and where no
  objection is made that it covered more than one question.

**Appeal:** SECOND VERDICT. It requires a strong showing of abuse of
  judgment on the part of the jury, and discretion on the part of
  the judge in refusing another trial, to justify this court in inter-
  fering after a second verdict for the same party.

*Appeal from Pottawattamie District Court.*—HON. WALTER I. SMITH, Judge.

SATURDAY, JANUARY 30, 1897.

ACTION at law to recover damages for the death of one William R. Grimmelman, resulting from injuries received by him while in the employ of the defendant company. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Wright* and *Baldwin* for appellants.

*Harl & McCabe* for appellee.

DEEMER, J.—For some time prior to the time of the accident in question, deceased was in the employ of the Union Pacific Railway Company at its roundhouse in Council Bluffs, Iowa, in what was known as the "turn-table" or "clinker pit" gang, whose duties were to take ashes from the engines at what was known as the "clinker pit," run them to the turntable, turn them around, and then run them into the roundhouse, where they were turned over to the roundhouse gang. Some months prior to receiving the injuries from which he died, he quit the employ of the company, and went west. He returned from the west about two weeks before the accident, and again entered the employ of the railway company, working at nights, as an engine wiper, in the roundhouse. The turntable of the railway company is directly south of the roundhouse. The clinker pit, to which we have referred, is about one hundred and forty feet northwest of the turntable, and from fifteen to twenty feet west of the roundhouse. The main body of the pit was nearly south of the west door of the roundhouse, and distant

about fifty feet. From the west door of the round-house there was a path leading to the turntable, which the employes were accustomed to use in going to and returning from the turntable. A stone sewer extended in a westerly direction from the roundhouse to Spoon Lake, a body of water about two hundred feet distant. Into this sewer both hot and cold water were discharged from the engines, and carried into Spoon Lake. A short time before the accident this sewer had broken near a manhole at a point near the south west corner of the roundhouse, and nearest the turntable; and the railway company had, a few days before plaintiff's intestate received his injuries, commenced to repair the sewer by digging a ditch from the manhole to Spoon Lake, with the idea of taking up the old sewer pipe and putting in new. The railway company continued to discharge the hot water from its engines into the sewer, and, as it escaped into the earth at the point where the break occurred, it soon caused the earth, which was loose and porous at this point, to give way; and the excavation gradually widened and deepened until on the fateful day it was a hole about eight feet in diameter, and about six or eight feet in depth. At the time when the engines were blown off, this hole would become filled with boiling water, which, owing to the character of the soil, would speedily pass away, until replenished by the blowing off of another engine. The company had a gang of men in the roundhouse, and another, called the "turntable gang," which was required to be about this excavation both day and night. The ditch of which we have spoken ran from the manhole to Spoon Lake, close to and parallel with the west side of the roundhouse, and, in digging it, the dirt was so thrown as to completely fill the space between the roundhouse and the ditch. On the other

side, dirt was also thrown, but a path from ten to twenty inches was left between the dirt and the west side of the ditch. Planks were also placed over the clinker pit to prevent the earth from filling in. The ditch was dug along a path which the men had been accustomed to use in going from the west door of the roundhouse to the turntable, and, after the work of excavating had been begun, the men followed the path which had been left at the west side of the ditch, and between it and the loose earth. No guards or barriers were erected around this excavation to which we have referred, nor around the hole which had been made by the hot water. Red lights were used, however, as a means of warning. One of these was placed at the manhole, another near the west door to the roundhouse, and a third north and west of the roundhouse. There was a street lamp near the hole, but it was not lighted on the evening in question. About 9 o'clock in the evening of the eighteenth day of May, 1892, Guinane, the foreman of the turntable gang, requested Norton, the foreman in the roundhouse, to send out a man to help him (Guinane); and Grimmelman was ordered out by his superior in response to this request. The night was dark, stormy, and rainy, and a high wind prevailed. Grimmelman's lantern had been taken from him, a red globe substituted, and it was being used as one of the warning lights near the ditch. He was sent out without a lantern, and had nothing but a torch to light his way, and this was soon extinguished by the wind. When he went out the roundhouse door, he discovered the turntable gang at the turntable, turning an engine. These he observed by the aid of the lights which they carried. He proceeded towards where they were, and in so doing fell into the hole which we have attempted to describe, which was then filled with boiling-hot water. His outcries for help brought two men from the

turntable, who pulled him out of the water, carried him to the roundhouse, and from thence to his home, where he subsequently died of his injuries. The negligence charged is—*First*, that the defendant failed and neglected to erect suitable guards, barriers, or other like protection, around the hole or excavation; and, *second*, that it did not properly warn plaintiff's intestate of the danger to be apprehended from the excavation.

At the conclusion of the evidence, defendant moved for a verdict. This motion was overruled, and defendant excepted. The case was thereupon submitted to the jury, and it returned a verdict for plaintiff for the sum of five thousand dollars, and also made the answers indicated to the following, among other special interrogatories: "Interrogatory 4. Did the said William R. Grimmelman know of the bursting of said sewer pipe, and of the building of said ditch? Answer. He knew of the digging of the ditch, but not of the bursting of the pipe. Interrogatory 5. Did the said William R. Grimmelman go back and forth over said ditch after the defendant began the construction of the same, and up to the night of the accident? Answer. Yes." "Interrogatory 12. Was the said William R. Grimmelman, just prior to the accident, ordered or directed to leave the roundhouse, and go to the clinker pit? Answer. He was ordered to go to the clinker pit gang." "Interrogatory 9. At the time of the accident was there a red light or danger signal burning on top of the manhole, and about five feet from the point where the said William R. Grimmelman was found in the ditch? Answer. Yes." "Interrogatory 16. Was the only direct and proper way for one wishing to go from the roundhouse to the clinker pit to go out the south door of the roundhouse, cross the planks directly in front thereof, and proceed directly south to the

clinker pit? Answer. Yes." "Interrogatory 20. Did
William R. Grimmelman, at the time of the accident,
have knowledge of the existence of the excavation
into which he fell, and that it was partially filled with
hot water? Answer. No. Interrogatory 21. Was
William R. Grimmelman, at the time of the accident,
acting under, and in obedience to, the orders of his
superiors? Answer. Yes." Defendant filed a motion
for judgment, notwithstanding the general verdict,
and, subject thereto, a motion in arrest of judg-
ment and for a new trial. These motions were each
overruled, and the defendant excepted, and now pros-
ecutes this appeal from the judgment ordered on the
verdict.

It is claimed that the court erred in overruling
defendant's motion for a verdict. And the grounds of
this contention are that the plaintiff's intestate was
guilty of such contributory negligence as bars
him of recovery. It is said that the deceased
knew of the excavation, or that, if he did not,
that he should have known of it, for the reason that
there was a red light near the hole into which he fell,
and a column of smoke arising from it, which was
sufficient to give notice to any man of ordinary pru-
dence of the character of the place; but that, instead
of avoiding the dangers, he walked into them, heed-
lessly and recklessly, and that his administrator can-
not recover. It is also said that had plaintiff's intestate
gone to the clinker pit, where he was ordered, instead
of to the turntable, where the turntable gang was
then at work, the accident would not have occurred.
It must be borne in mind, that in passing upon the
questions raised by the assignments of error which
are now before us, we can only consider the undis-
puted facts, and that version of the evidence which is
most favorable to plaintiff, where there is any dispute.
It is not our province to say what we think the findings

ought to have been, but, rather, whether there is any evidence to take the case to the jury, and to support the verdict finally returned.

There is no doubt that Grimmelman knew of the ditch, and there is also no question that the warning lights were in position as claimed; but there is no evidence to show that he knew of the excavation, or of its being filled at times with hot water. When he started to assist the turntable gang, he followed the path usually taken, along the side of the ditch, and the jury found specially that he did not know of the excavation, and of the hot water therein. The red lights simply warned of danger, not of the character thereof; and, in so far as shown, the only knowledge that Grimmelman had of its character was that there was a ditch there which had been excavated for some purpose. The lights tended to show that the danger to be apprehended was from a ditch. They did not, of themselves, indicate that at one part of it there was a large hole filled at times, at least, with hot water. Grimmelman, since his return from the west, had been working at nights in the roundhouse, and did not know of the break in the sewer. He had never, prior to the accident, been near the hole into which he fell; and we do not think it should be said, as a matter of law, that he was guilty of negligence. His employment was in the roundhouse. Pursuant to the orders of his superior, he left this for another work, which, on account of the condition of the place, he was required, or at least permitted, to pass, was more dangerous than the one for which he was employed. He took the course he was theretofore accustomed to take when at work with the turntable gang, and, without knowledge of the dangers, ran into the hole. It is said that the escaping steam from this excavation was sufficient to give him notice of the dangers. No one testifies, however, that this escaping steam could be

seen at night, and there is no reason for saying that it could be seen on this particular night. It is also argued that Grimmelman must have seen the steam in the day time, while he was working around the roundhouse. This is a bare inference, and does not necessarily follow from the facts disclosed. It seems that steam arose from it in the day time only when there was hot water in the excavation; that the water soon passed away, and the steam was no longer visible. It affirmatively appears that Grimmelman was not near this excavation at any time after it had been made, and that, as his duties called him there at night, he had very little knowledge of what daylight would reveal. The deceased had the right to assume that he would not be called to a more dangerous employment than that in which he was engaged, and to meet dangers of which he was not aware, without notice being given him thereof. The only danger he knew of was from the open ditch, and, if this had been all there was, the accident in question would not have happened. It does not appear what light the lantern at the manhole gave, and we cannot assume that it was sufficient to disclose the dangers lurking in that hole. Defendant also contends that Grimmelman was guilty in that he did not go directly to the clinker pit, instead of to the turntable. Had he done this, and crossed over the ditch on the planks which spanned it near the roundhouse door, the accident would not have happened. The difficulty with this contention is that the men he was ordered to assist were at the turntable when he left the roundhouse, and he proceeded directly to where they were, instead of going to the clinker pit, where he was to work. This he did, as we must assume, without knowing of the dangers besetting the path which he selected, and we do not think it follows, as a matter of law, that he was guilty of contributory negligence in taking

the course he did.    The request made of the round-
house foreman was that he send a man out to help
the turntable gang.    Their work was at the turntable
and the pit, and Grimmelman was justified in going
to the turntable, under the circumstances disclosed.
While the question is not free from doubt, yet we are
constrained to hold that the question of contributory
negligence was properly submitted to the jury.

II.    The question of negligence on the part of the
defendant was properly submitted to the jury, and we
cannot interfere.    It is said in argument that there is
no evidence that Grimmelman was not warned
of the danger, and that the presumption is that
he was so warned.    We do not think this is the
rule.    *Greenleaf v. Railroad Co.*, 29 Iowa, 46; *Smith v.
Car Works* (Michigan) 27 N. W. Rep. 662; Sharman &
R. Negligence section 99, and authorities cited.
Appellant relies upon the case of *Wannamaker v. Burke*,
111 Pa. St. 423 (2 Atl. Rep. 500), which is a case
where defendant in error fell into a hole in an
upper story of plaintiff in error's tailoring establish-
ment.    In that case the plaintiff in error insisted that,
as the hole was in such position in the room as not to
be in the ordinary line of travel, the fact that it was
uncovered was not evidence of negligence.    This point
was sustained by the court of appeals, but, in the
course of the opinion, Paxson, J., in speaking for the
court, said:    "If the hole had been in the middle of
the room, near a passage-way, or where persons were
accustomed to pass and repass in the regular course of
business, it would have been, perhaps, a question for
the jury whether leaving it uncovered, or insufficiently
protected, even for a short space of time, was not neg-
ligence.    But here was a small hole in the floor, on
the extreme side of the building, within one inch of
the wall, outside of the ordinary walks of any one.
*  *  * The defendant could not have anticipated such

an accident as this as likely to flow from the condition of the hole at that time, and they are not to be held to a rule which would prevent the possibility of an accident." In the case at bar the jury may well have found that the excavation was made on the line of the path the defendant's employes were accustomed to travel, and that the edge of the hole was close to a path left at the side of the ditch for the employes to use in the performance of their labors. The court below very clearly charged the jury with reference to the duty resting upon defendant with reference to furnishing its employes with a safe place in which to work, and as to giving plaintiff's intestate notice of the unknown dangers incident to his change of work. And we cannot disturb the verdict. It is not to be overlooked that this is the second time that a jury has returned a verdict for the plaintiff. We have frequently held that in such a case it requires a strong showing of abuse of judgment on the part of the jury, and of discretion on the part of the judge in refusing another trial, to justify us in interfering. *Gaslight Co. v. Greene*, 28 Iowa, 289; *Hollenbeck v. City of Marshalltown*, 62 Iowa, 21 (17 N. W. Rep. 155); *State v. Cross*, 12 Iowa, 66.

III. Appellee was permitted to prove that his intestate had been an apprentice at the plasterers' and bricklayers' trade for two or three years, before he went to work for the railway company, and, while he had not fully learned the plastering business, yet that he could do a good day's work at it. He was also permitted to show that the average wages paid to plasterers at the time of Grimmelman's death, was four dollars per day. Appellant assigns errors on these rulings. We think they were correct. See *Rayburn v. Railway Co.*, 74 Iowa, 643 (35 N. W. Rep. 606), and (38 N. W. Rep. 520).

IV. Complaint is made of instructions 4 and 5, given to the jury. Counsel does not say that they are erroneous, considered abstractly, but they do insist that, as applied to the facts, they are erroneous and misleading. We have fully considered the questions argued in the first and second divisions of this opinion, and need not further refer to them.

V. It is said that the special findings are inconsistent with the general verdict, and that judgment should have been ordered for the defendant on the special findings. The argument proceeds on the theory that plaintiff's intestate knew of the excavation and the dangers incident to passing it, or that, if he did not know, he ought to have known, had he exercised ordinary care and prudence for his safety. The jury specially found, in answer to the twentieth interrogatory, that he did not know of the excavation, and that it was filled with hot water. It is also argued that the twentieth interrogatory was erroneously submitted, because it is vague, indefinite, and misleading. While the interrogatory may be construed to contain two questions, either of which might be answered by "Yes" or "No," yet we think it was not misleading, and that the jury fully understood its import when returning their answer thereto. The answers returned to the other interrogatories clearly indicate that they proceeded carefully and intelligently in arriving at their conclusions, and that, in answering the one in question, they intended to say that Grimmelman had no knowledge of either the excavation, or of the hot water therein. The fact that the question was involved, or that it called for two answers, was not made a ground of objection. It also appears that many of the interrogatories submitted by the defendant were in the same form,—noticeably, the fourth. But, if it should be held that the interrogatory was faulty in form, its submission would

not be a ground for disturbing the verdict. The result would be the same without this answer thereto as with it. The interrogatories submitted by the defendant did not cover the whole case. They did not go to the knowledge of Grimmelman of the excavation which caused his death, and of the danger incident to passing the same.

We have examined the whole record with care, and are all of opinion that we cannot interfere with the verdict, or with the discretion vested in the trial court, in overruling the motion for a new trial, on the ground of insufficiency of the evidence.—AFFIRMED.