[No. 6526.   Decided February 14, 1907.]

W. A. KING, *Respondent*, v. GRIFFITHS-SPRAGUE STEVEDORING COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—SAFE PLACE.  In an action by a longshoreman who was injured by the fall of a section of a hatch cover, it is not necessary to show that the foreman actually knew of the dangerous condition of the hatch, if, in the performance of his duty to furnish a safe place, he ought to have known of the danger.

SAME—ASSUMPTION OF RISK.  A longshoreman does not assume the risk from a dangerous condition of an upper hatch cover, affecting the safety of the place where he was sent to work, and was not bound to inspect the same, where he was at work between decks pursuant to orders, and had no authority to disturb a hatch without direction of the foreman.

SAME—CONTRIBUTORY NEGLIGENCE—SAFE PLACE—MOMENTARY FORGETFULNESS.  A longshoreman working between decks, who was injured by the fall of a projecting section of an upper hatch, is not guilty of contributory negligence in that he saw the projecting plank, and failed to give notice to the foreman, where it appears that at the time he saw it.in the forenoon no one was working near or under the same and the foreman was not present, and in the afternoon when sent under the hatch he had temporarily forgotten about it.

Appeal from a judgment of the superior court for King county, Hatch, J., entered July 26, 1906, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a longshoreman at work upon a steamship.   Affirmed.

[1]Reported in 88 Pac. 759.

*Richard S. Eskridge* (*Philip Tindall*, of counsel), for appellant.

*Herbert E. Snook*, for respondent.

DUNBAR, J.—Respondent was employed as longshoreman on the 16th day of January, 1905, by the appellant corporation, which had a contract for loading the steamer Kanagawa Maru, loading at the Great Northern docks in Seattle, Washington. On the date mentioned the respondent, with other workmen, was on between-decks under hatch No. 2 of said vessel, stowing a cargo of copper pigs in the wings on either side of said hatch. One Robert Miller was the foreman of appellant, superintending the work. While respondent was in the act of covering the lower hatch, a section of the upper hatch, a plank which had been left in a position extending out over the hatch, fell upon him, striking his foot and inflicting injuries, compensation for which is sought in this action. It was not ascertained what was the cause of the falling of this section of the hatch cover which injured the respondent. It was presumed that it was either touched by some person, or that the vibration of the boat caused it to fall. At about twelve o'clock the workmen came up out of the ship for lunch, and returned again at one o'clock, the respondent among others descending the ladder at hatch No. 2 to the between-decks, where they remained until the accident happened. The cause was submitted to the jury, verdict was returned for $1,000, judgment was entered on the verdict, and from such judgment this appeal is taken.

At the close of the appellant's testimony, motion was made to take the case from the jury and enter judgment for the appellant. At the close of all the evidence motion was made for judgment, notwithstanding the verdict. It is assigned that the court erred in denying these aforesaid motions, and denying the motion for a new trial, and in giving and refusing certain instructions. The first four assignments

all involve the respective contentions that there was no negligence proven on the part of the agent of the appellant, and that the respondent assumed the risk of the employment and was also guilty of contributory negligence. If we understand the learned counsel for the appellant, his contention is that it must be affirmatively shown that Miller, the foreman, actually knew of the dangerous condition of the hatch covering before negligence can be imputed to him. Such is not the law. If, in the performance of his duty to furnish the employee a safe place to work, he ought to have known of the danger, he is equally guilty of negligence; for the servant has a right to rely on the master's duty to furnish a safe place, and to assume that he has made all the necessary observations and investigations to that end. In this case there was ample testimony on the subject of the negligence of the master to warrant its submission to the jury.

On the question of assumption of risk, it is earnestly contended by counsel for appellant that, under the decisions of this court, the duty devolved upon the workman to investigate the safety of the place; that in passing through the hatch, it was the duty of the men to observe its position, and if necessary make it safe. But the cases cited to the effect that the workman must notice the dangers of the employment and protect himself from them are not in point in this kind of a case. For instance, *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410, from which appellant has quoted at great length, was a case where the workman who was injured had the authority, and where it was his duty, to inspect the wires, one of which injured him by reason of defective insulation. The safety of the place was a matter for him to determine, there being no other inspector and he ' being qualified and properly equipped for the performance of that duty. To the same effect are many of the other cases. But the rule governing this kind of a case must of necessity be entirely different.

There is no question here of the respondent being hurt by handling machinery with which he was working, as in the case of *Daffron v. Majestic Laundry Co.,* 41 Wash. 65, 82 Pac. 1089, and other cases of that character; or of machinery or places which he was called upon to observe or examine, or which, under the testimony of the case, he even had a right to interfere with. In fact, it was testified to by the foreman, Mr. Miller, that the respondent at the time of the injury was between the decks, pursuant to his orders, and that the longshoremen had no authority or right to disturb a hatch without the authority or direction of the foreman. Under such circumstances, it would seem that the submission of the question of assumption of risk to the jury could not be objected to, at least by the appellant.

It is contended, however, that the respondent was guilty of contributory negligence, for the reason that he continued to work under the hatch after having noticed the projection of the plank and the danger incident to such projection, and ordinarily in the absence of the notification to the master of the danger and a promise on the part of the master to remedy the situation, a continuance of the service would constitute negligence. But in this case, while the respondent frankly testified that he had noticed the condition of the hatch covering, and called it to the attention of some of the other men, he testified that he did not call the attention of the foreman to it, for the reason that the foreman was not there when he saw it. The following excerpt from the testimony will make plain the situation:

"Q. Now, then, when was it that you first noticed this piece of loose hatch covering? A. I don't exactly remember what time it was. Q. Did you see it before it fell on you? A. I saw it right after noon. Q. Where were you at the time, right after noon? A. We were working around this square of the hatch—we were not working under it at all. The copper was coming through the port hole and we were putting it in the wings of the ship outside of the hatch, at the forward end. Q. And you saw this piece of hatch cov-

ering at that time? A. Yes, I saw it there. Q. In the position described in your complaint? A. Yes, sir. Q. You noticed it yourself? A. I noticed it, yes, but there was no one under it or anywheres near it—you didn't have to work anywhere near it. Q. What did you do when you saw it? A. We just kept on carrying in copper. Q. What did you say when you saw it? A. I do not remember that I said much of anything at all, because there was no one working under it at all. We were working in the wings of the ship. . Q. Did you tell the foreman of it? A. No, sir, I didn't see him. Q. When he came there to give the order to go on deck, to clear the hatch, you did not tell him anything about it? A. No, sir, I never thought any more about it—it slipped my mind altogether, and furthermore I never thought of the hatches at all, only this one that we were going to put on down below."

The appellant concedes that this court has frequently decided that an employee is not necessarily guilty of contributory negligence in subjecting himself to danger, the existence of which has come to his attention but which he has temporarily forgotten. We think the testimony shows that the respondent in this case brought himself squarely within that rule. We are not able to discover that the giving of any instructions or the refusal to give instructions constitutes any error. The record shows that the case was remarkably clear of error in all particulars. The judgment is affirmed.

HADLEY, C. J., RUDKIN, and ROOT, JJ., concur.

MOUNT, J. (concurring)—The respondent was not working near the danger when he observed it. He was afterwards sent under the hatch but did not then observe it. There is no evidence that he might have seen the danger by looking. I therefore concur in the result.

CROW, J., concurs with MOUNT, J.