[No. 7000.  Decided March 6, 1908.]

A. L. COOK, *Respondent*, v. CHEHALIS RIVER LUMBER COMPANY, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—ASSUMPTION OF RISKS—NEGLIGENT ACT OF FOREMAN—EVIDENCE—SUFFICIENCY. An employee does not assume the risk as one incident to the work of constructing a trestle, where it appears that the foreman negligently directed the attachment of a line to a timber in such a position that, upon tightening the line by his orders, planking at the top of a bent of piles was pushed loose and precipitated upon the employee below, who was not aware of the position of the line or given sufficient warning to enable him to reach a place of safety.

SAME—CONTRIBUTORY NEGLIGENCE. In such a case the employee is not guilty of contributory negligence in not anticipating the fall of the planking, where the operation was not the ordinary one of raising the timber, but merely to lift it sufficiently to enable the employee to saw it, and the ordinary dangers were increased by the act of the foreman.

SAME—FELLOW SERVANTS—FOREMAN OF CONSTRUCTION WORK. In such a case, the foreman having direction of the work of constructing the trestle is not a fellow servant of an employee engaged in sawing off the timber, but is a vice principal.

[1]Reported in 94 Pac. 189.

DAMAGES—EARNING CAPACITY—EVIDENCE—ADMISSIBILITY. In an action for injuries to an employee working as a common laborer, evidence is admissible on the subject of his earning capacity as to his wages while working as a gold miner in another state.

DAMAGES—PERSONAL INJURIES—EXCESSIVENESS. A verdict for $1,200 for injury to the knee is not excessive, where eleven months after the injury there was soreness and pain and contraction of muscles preventing the leg from straightening which would require a surgical operation to restore to normal condition.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered May 29, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee. Affirmed.

*George Dysart* and *E. R. York*, for appellant.

*Eugene Carr* and *Robert M. Davis*, for respondent.

FULLERTON, J.—The respondent recovered in this action for injuries received by him while in the employment of the appellant engaged in the construction of a logging railroad. The evidence relating to the manner in which the injury occurred is contradictory, but since the jury found in favor of the respondent, we must accept as true the version most favorable to his contention. In brief that version is as follows: At the time of the injury, the appellant was constructing a trestle across a gulch. The trestle consisted of piles driven in the ground by a steam pile driver in bents of four piles each, the bents being sixteen feet apart. After a bent was driven, timbers were nailed on the several piles composing it connecting it with the last preceding bent. These timbers were attached to the piles probably 2½ feet or 3 feet below the top level, and extended out from the front of the last bent some four or five feet. Heavy planks were then laid across the timbers both behind and in front of the bent, making a platform on which the workmen stood while sawing off the tops of the piles to bring them to the proper level, and while fitting the cross-piece thereon called the cap. This cap was a piece

of timber 12x12 inches in size and 16 feet in length. It was fastened to the tops of the piles by pins and furnished the rests for the stringers on which the ties for the railway were laid. The piles and timbers for the caps were brought from a point on the opposite side of the gulch from that on which the work was proceeding to the working place by means of the pile driver line.

Just prior to the time the respondent was injured, a bent had been driven, and the timbers fastened thereto and the planks regularly placed. A timber for a cap was then dragged by means of the pile driver line from the opposite side of the gulch to the foot of the bent. This timber was too long for use as a cap, and the respondent and his fellow workman proceeded to saw it off with a crosscut saw. The saw pinched after the timber was partially cut through, and to relieve this one Hanson, who was the appellant's foreman directing the work from the top of the bent, ordered the pile driver line to be fastened near the middle of the cap; the purpose being to partially raise the timber by a strain on the line, thus removing the pressure which caused the saw to pinch. When the cap timber had been dragged from the other side of the gulch the line was on top of the planking which had been placed on the outside of the last bent, but while the respondent and his co-worker were sawing, it had been taken up by the foreman and let down between the bent and this planking. On being fastened to the cap timber at the the point directed, it was some 8 or 10 feet outward from the bent at the foot, and thus outward from a perpendicular to the upper fastening of the line. After the fastening had been made, the foreman ordered the engineer in charge of the pile driver to tighten up on the line. This caused the line to straighten, which in turn caused it to press outwardly on the loose plank placed on the outside of the bent. The result was that the planks were pushed off the projecting timbers, one of which fell and struck some object which broke it into two pieces, one of which pieces struck the respondent, causing the injuries for which he recovered in this action.

The respondent did not discover the position of the line prior to the time the order to tighten up on it was given, nor was sufficient warning given him after the planks started to fall to enable him to get into a place of safety.

There was uncontradicted evidence tending to show that the work in which the respondent was engaged at the time of the injury was work which he was employed to do; that the machinery and appliances used in and about the work were the usual and ordinary appliances used in similar work, and were appliances suitable for the purposes for which they were used; that the general manner in which they were used was the usual and customary manner of using such appliances; and that the ordinary dangers of the work were open and apparent to any one. There was testimony also to the effect that in hoisting a cap from the ground to the top of the bent the ordinary method was to put the rope between the bent and outside planking.

The appellant's first contention is that the falling of this board was one of the ordinary dangers incident to the business, and that the respondent must be held to have assumed the risk of injury from such a cause. The rule undoubtedly is that a servant assumes the risk of injury from dangers incident to his employment which are apparent to him and which the master does not undertake to remedy as an inducement to keep the servant at work, or is under no duty of positive law to discover and remedy. But this doctrine, it seems to us, has no application to the case before us. Here, clearly, the danger causing the injury was not one ordinarily incident to the employment. On the contrary, if the respondent's evidence is to be believed, the injury was caused by the grossest kind of negligence on the part of the appellant's foreman who was in immediate charge of the work. He directed a thing to be done which the slightest investigation must have told him would be highly dangerous to both of the men who were engaged in work at the foot of the trestle. The tightening of the rope, in the position it was placed by his

orders, must necessarily throw off the planking from the projecting timbers, and it was gross carelessness to do this without warning the men below of their danger. This danger was not, therefore, a danger incident to the employment. It was one caused by the negligent acts of the appellant's foreman, and one which he could have avoided by using even ordinary prudence.

The cases of *Krickeberg v. St. Paul & Tacoma Lumber Co.*, 37 Wash. 63, 79 Pac. 492; *Olson v. McMurray Cedar Lumber Co.*, 9 Wash. 500, 37 Pac. 679; *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; and the kindred cases cited by the appellant are not in point on this question. They lay down the rule that a servant assumes the risk of dangers ordinarily incident to his employment, and hold that the dangers causing the injuries in the several cases were such as the servant there assumed. But the facts in none of the cases were like the facts in the case before us. Here, as we say, the danger was one brought on by the negligent act of the appellant's foreman, and was not one incident to the employment at all. The question of liability was therefore for the jury. *Pearson v. Federal Min. etc. Co.*, 42 Wash. 90, 84 Pac. 632, and cases there cited.

It is next contended that the respondent was guilty of contributory negligence, in that he did not anticipate the falling of the planks and get out of the way. Had the ordinary conditions existed when the order was given to fasten the line to the cap timber and haul up thereon, it may be that the respondent would have been guilty of contributory negligence had a board from the trestle fallen upon him. But he was not bound to anticipate extraordinary conditions such as existed here. When the appellant, by the act of its foreman, voluntarily increased the ordinary danger, it must be shown that he had notice of that increased danger before it can be said that he was guilty of contributory negligence in not moving further away.

The appellant also contends that the foreman was a fellow

servant of the respondent, and that it is not responsible for his negligence for that reason. But without entering into a discussion of the question, we think the foreman was clearly a vice principal under the rules which we have heretofore announced. *Nelson v. Willey Steamship & Nav. Co.*, 26 Wash. 548, 67 Pac. 237; *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114; *Dossett v. St. Paul & Tacoma Lumber Co.*, 40 Wash. 276, 82 Pac. 273; *Eidner v. Three Lakes Lumber Co.*, 45 Wash. 323, 88 Pac. 326.

It is also contended that the court erred in permitting the appellant to testify to his earnings while working for wages as a gold miner in another state. But we think the evidence admissible. The fact that the respondent was working as a common laborer did not prevent him from proving that he was skilled in another business in which he was capable of earning wages of skilled labor. *Chicago etc. R. Co. v. Long*, 26 Tex. Civ. App. 601, 65 S. W. 882; *Grimmelman v. Union Pac. R. Co.*, 101 Iowa 74, 70 N. W. 90.

Lastly the appellant complains that the amount of recovery was too large. The amount of the recovery was $1,200. The injury was to the knee and had occurred some eleven months before the trial. At the time of the trial there was still soreness and pain, and a contraction of certain muscles preventing the leg from straightening; one of the doctors saying that a surgical operation would be necessary to bring it back to its normal condition. Under these circumstances we do not think the recovery so far excessive as to warrant interference with it by this court.

The judgment is affirmed.

HADLEY, C. J., MOUNT, and CROW, JJ., concur.