[No. 10636.   Department Two.   January 18, 1913.]

NICK KOLOFF, as *Administrator etc., Respondent*, v. CHICAGO, MILWAUKEE AND PUGET SOUND RAILWAY COMPANY, *Appellant*.[1]

MASTER AND SERVANT—SAFE PLACE—NEGLIGENCE OF FOREMAN— PROXIMATE CAUSE—EVIDENCE—SUFFICIENCY. Negligence of the defendant's foreman in dropping a brick upon and killing plaintiff's decedent is sufficiently shown where it appears that he was tossing the bricks around immediately above where he had set the men to work and that one of them fell, and that deceased was killed by the fall of a brick.

SAME—FELLOW SERVANT—FOREMAN IN CHARGE OF WORK—SAFETY OF PLACE—NECESSITY OF SUPERVISION—ASSUMPTION OF RISKS. Where a foreman negligently tossed bricks around immediately above the place where he had set men to work, killing a man, he infringed the duty of the master to furnish a safe place, and there is no question of fellow servants or assumption of risks involved.

DEATH—ACTIONS FOR WRONGFUL DEATH—PROOF OF MARRIAGE AND DEPENDENCY—EVIDENCE—SUFFICIENCY. In an action for wrongful death, there is sufficient evidence of marriage of the deceased and dependency, where his brother testified that he attended the wedding in a foreign country ten years before, that the ceremony was performed by a priest according to the customs of the country, and that the parties lived together until the deceased came to this country and that three children were born to them.

EXECUTORS AND ADMINISTRATORS—APPOINTMENT—WAIVER OF RIGHT —RIGHT TO QUESTION—COLLATERAL ATTACK. An appointment of a suitable person as executor cannot be collaterally attacked by a third person, as having been made before the expiration of the forty days in which the widow and next of kin could apply, where they waived their right by failing to apply within the forty days.

[1]Reported in 129 Pac. 398.

DEATH—ACTION BY ADMINISTRATOR—AUTHORITY—CONSENT OF BENEFICIARY—NECESSITY. In an action by an executor for wrongful death, brought for the benefit of the widow and children of the deceased, it must be shown that the widow has sanctioned and authorized the suit.

SAME—EVIDENCE OF CONSENT—ADMISSIBILITY. The consent of a widow to an action by an executor for the wrongful death of a husband cannot be shown by a letter written by the sister at her request, she being unable to write, asking her brother-in-law to send her money for the support of herself and children.

SAME—EVIDENCE OF CONSENT—FOREIGN DOCUMENTS—AUTHENTICATION. Such consent cannot be shown by a certificate of the mayor and secretary of a foreign city, which was not such as to constitute evidence at common law or under any state or Federal statute.

SAME — CONSENT OF WIDOW — FOREIGN ACKNOWLEDGMENT. Such consent cannot be shown by a paper purporting to be signed by the widow, her signature being authenticated only by an acknowledgment in sufficient form before the mayor of a foreign city using a seal; since proof of the execution should have been made by testimony or deposition.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 30, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Reversed.

*Geo. W. Korte (F. M. Dudley,* of counsel), for appellant.

*Walter L. Johnstone* and *S. A. Keenan,* for respondent.

ELLIS, J.—This is an action by the administrator for the benefit of the widow and minor children of the decedent, to recover damages from the defendant railway company for its alleged negligence resulting in the decedent's death. The evidence introduced by the plaintiff fairly established the following facts: The decedent was a common laborer, about thirty-five years of age, a native of Bulgaria, and had resided in this country but about twenty-six months. The defendant, in September, 1911, was constructing an oil tank at Moncton, now Cedar Falls, Washington. The lower portion was of concrete, and above this, of brick work upon which were to rest two 12 by 12 wooden beams for the support of a large

steel oil tank.  This and various other work was being done in that vicinity, and a number of men, including the deceased, were there employed under the direction of a foreman of the defendant.  The concrete and brick work of this structure constituted a hollow, octagonal tower, about forty feet high, which had been completed at the time of the accident.

On September 19, the foreman called eight or ten men, among them the deceased, from other work, to assist in hauling up, by means of a rope and tackle, the timbers to be placed across the top of this tower.  Near the bottom was a door, and the timbers were being hauled up from the inside.  Two men were placed inside the tower to attach and guide the rope, while the deceased and five other men were directed by the foreman, who was in immediate charge of the work, to stand near the door on the outside and pull on the rope at his command.  The foreman and another man were on top of the tower, at a point almost immediately above the six men.  The first timber was hauled up without mishap.  After the second timber was started, some difficulty was experienced, and it was lowered for readjustment of the rope by the men inside.  While this was in progress, the foreman was engaged in shifting the position of certain loose bricks on the top of the tower, tossing them from one position to another immediately above the six men.  He had been so engaged for three or four minutes when a brick fell, striking the deceased and killing him.  At the time one of the two men on top of the tower—no witness could say which—called out, "Look out below," and immediately afterwards, "My God, I have killed a man."  While no witness testified to seeing a brick leave the foreman's hands and hit the deceased, one man said he saw one of the bricks tossed by the foreman fall from the tower and strike the timbers of a narrow scaffold above the men below; that he could not see the man below, but immediately ran to the tank and saw the man lying down.  There was no evidence

18—71 Wash.

tending to show that the deceased was ever on top of the tower, or had ever worked upon it or about it, or that he had any knowledge or warning of any kind that there were loose bricks upon it. The defendant offered no evidence.

The complaint charged as negligence, (a) the throwing of or causing the brick to fall by the defendant's foreman in charge of the work; (b) the placing of deceased in a dangerous and extra hazardous position of which he had no knowledge or means of knowledge; (c) failure of the defendant to provide the deceased with a safe place of work; (d) failure to provide any means to protect the deceased from carelessness or negligence on the defendant's part. The cause was tried to a jury. Defendant's motion for a nonsuit was overruled. The jury returned a verdict for $10,000. Defendant's motion for a new trial was overruled, and judgment was entered upon the verdict. The defendant appealed.

The appellant first contends that there was no evidence to show, either directly or indirectly, what caused the brick to fall. As we have seen, there was direct evidence that the foreman was tossing the bricks from one position to another and that one of them fell. There was no evidence that more than one brick fell, and the evidence was conclusive that a falling brick killed the deceased. The evidence was ample to warrant the jury in finding that the negligence of the foreman caused the brick to fall. The cases from this court cited by the appellant are not apposite. In *Lewinn v. Murphy*, 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912 D. 433, there was no evidence of any human agency in connection with the fall of the plank. In *Hanson v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457, there was no evidence, either direct or circumstantial, to show what caused the accident. In *Frengen v. Stone & Webster Eng. Corp.*, 66 Wash. 204, 119 Pac. 193, the facts were in no sense similar to those here presented.

It is also contended that, if the cause of the fall of the brick was shown, it was something over which the appellant as master had no control and was the result of an omission of fellow service. This is equally untenable. Without attempting to pursue the tenuous distinctions suggested by the appellant, it will be sufficient to say that the negligent act of the foreman infringed a duty which the appellant as master owed to the deceased, namely, the exercise of reasonable care to furnish a reasonably safe place of work and to keep it reasonably safe. There is no question of fellow service involved. *Hall v. Northwest Lumber Co.*, 61 Wash. 351, 112 Pac. 369. If the foreman did not represent the master, then there was a confessed lack of reasonable supervision looking to the safety of the servant's place of work. *Martin v. Hill*, 66 Wash. 433, 119 Pac. 849; *Hicks v. Jenkins*, 68 Wash. 401, 123 Pac. 526. If he did represent the master, then his negligence in that capacity rendered the place of work unsafe. He should not have moved the bricks nor permitted them to be moved without warning the men below. The case is simple and typical. It falls directly within the principles announced by this court in the following decisions: *King v. Griffiths-Sprague Stevedoring Co.*, 45 Wash. 425, 88 Pac. 759; *McLeod v. Chicago, Milwaukee & P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749; *Nelson v. Willey Steamship & Nav. Co.*, 26 Wash. 548, 67 Pac. 237; *Howland v. Standard Milling & Logging Co.*, 50 Wash. 34, 96 Pac. 686; *Creamer v. Moran Bros. Co.*, 41 Wash. 636, 84 Pac. 592.

The deceased, when he took the position to which he was assigned by the foreman's command, had the right to assume that it was reasonably safe. He assumed no risk not reasonably a necessary incident to the actual work in hand. He was subjected to an unnecessary peril without warning. *Richardson v. Spokane*, 67 Wash. 621, 122 Pac. 330; *Fueston v. Langan*, 67 Wash. 212, 121 Pac. 55; *Dumas v. Walville Lumber Co.*, 64 Wash. 381, 116 Pac. 1091; *Howland v.*

*Standard Milling & Logging Co., supra; Hicks v. Jenkins, supra; Cook v. Chehalis River Lumber Co.,* 48 Wash. 619, 94 Pac. 189.

It is next contended that there was no competent proof that the decedent left a widow and children. His brother testified, that he was present at the wedding in Bulgaria ten years ago; that the ceremony was performed by a Christian priest, as customary in that country; that the contracting parties lived together until decedent came to this country; that three children were born to them, a girl and two boys. This evidence was competent and ample to go to the jury upon these points. 8 Ency. Evidence, 465; *Potter v. Potter,* 45 Wash. 401, 88 Pac. 625; *Nelson v. Carlson,* 48 Wash. 651, 94 Pac. 477.

It is also contended that there was no evidence of a legal appointment of the respondent as administrator. It is argued that the appointment was invalid, because it was made within forty days after the decedent's death, and there was no showing of waiver of the right to act or of a request to appoint the respondent by the widow. Whatever might be said of this contention on a direct attack, it is unavailing here. The' right of the surviving spouse and next of kin, in their order, accorded by statute (Rem. & Bal. Code, § 1389), is a personal right. It is waived by a failure to apply within forty days after the death. Such failure confers upon the court discretionary power to appoint any suitable person. *McLean v. Roller,* 33 Wash. 166, 73 Pac. 1123.

The petition for administration shows that the widow and children are nonresident aliens. None of them could act. The decedent's brother, a resident of this state, who was appointed, is, so far as the record shows, a suitable person. The forty days have long since expired, and none of the persons entitled to priority have objected to the appointment. The appointment is valid as against collateral attack. 18 Cyc. 140. *Moreland v. Lawrence,* 23 Minn. 84; *Pick v. Strong,* 26 Minn. 303, 3 N. W. 697; *Larson v. Union Pac.*

*R. Co.*, 70 Neb. 261, 97 N. W. 313.  See, also, *Wiley v. Verhaest*, 52 Wash. 475, 100 Pac. 1008; *Magee v. Big Bend Land Co.*, 51 Wash. 406, 99 Pac. 16; *State ex rel. Warren v. Ayer*, 17 Wash. 127, 49 Pac. 226.

It is next urged that there was no competent evidence that the widow and children authorized or sanctioned the bringing of this action by the administrator.    This action was brought under § 183, Rem. & Bal. Code.   This court has held that no right of recovery for wrongful death existed at common law, and that the right is therefore governed by the  statute (*Manning v. Tacoma R. & P. Co.*, 34 Wash. 406, 75 Pac. 994) ; also, that the sole beneficiaries of the right of action are the widow and children and not the parents or collateral heirs (*Noble v. Seattle*, 19 Wash. 133, 52 Pac. 1013, 40 L. R. A. 822; *Manning v. Tacoma R. & P. Co., supra*) ; that the statute grants but  one  cause  of action, to be prosecuted in a single suit by the heirs or personal representatives of the deceased (*Riggs v. Northern Pac. R. Co.*, 60 Wash. 292, 111 Pac. 162) ; and that, where an action is prosecuted in the name of the personal representative, it is not for the benefit of the estate, but for the sole benefit of the widow and children who share jointly in the damages recovered.  *Copeland v. Seattle*, 33 Wash. 415, 74 Pac. 582, 65 L. R. A. 333.

Again, this court has said that, while it is customary to prosecute such actions in the name of the widow and children, it may be prosecuted in the name of the personal representative for their benefit.  *Archibald v. Lincoln County*, 50 Wash. 55, 96 Pac. 831.  In the *Copeland* case, 33 Wash., at page 421, it is said:

"It is true, the defendant cannot be subjected to two actions for the one cause, and as the widow has the first right to sue, it must be made to appear, at some stage of the proceedings prior to the time the defendant is called on to put in his defense, that the widow has knowledge of, and sanctions the action brought by the personal representative, so that she cannot afterwards repudiate his acts and maintain an

action in her own name.    The danger of a defendant's being
subjected to more than one action is, however; not very real.
It is always within the power of the courts to protect a de-
fendant against the possibility of being so subjected, and
doubtless they will do so when called on at the proper times."

We adhere to the rule so laid down as salutary and essential
to the protection, not only of a defendant, but also of the
rights of the widow and children.    While it is there assumed
that the widow has the first right to sue, this was said in
relation to the facts there presented.    In that case there
were no children but only a widow, and that language was
used in reference to the right as between the beneficiaries
and the personal representative. The right of recovery being
joint and enforceable only in a single action, it follows that
the right to sue as to the widow and children is coordinate,
neither having a prior right as to the other.    It also fol-
lows that, if an authorization or sanction of the suit by the
administrator is necessary on the part of the widow, it is
also necessary on the part of the heirs.    We have decided
that nonresident aliens, widow and children, may maintain
an action for wrongful death under this statute in their own
names.    *Anustasakas v. International Contract Co.*, 51 Wash.
119, 98 Pac. 93, 130 Am. St. 1089, 21 L. R. A. (N. S.) 267.
In another case it was held that a nonresident widow and
minor children can maintain their joint action in this state,
the widow procuring herself to be appointed guardian *ad
litem* for the minors under § 187, Rem. & Bal. Code, for the
purpose of bringing the action.    *Shannon v. Consolidated
Tiger & Poorman Min. Co.*, 24 Wash. 119, 64 Pac. 169.    In
a more recent case, we held that a minor may maintain the
action by the widow as guardian *ad litem*, the widow ap-
parently having waived her right to join in the same action
personally.    *Riggs v. Northern Pac. R. Co.*, 60 Wash. 292,
111 Pac. 162.

From these holdings it is deducible that, there being but
one right of action, joint in the widow and children, the

widow may submit herself and *the minor children* (where
under the age of fourteen) to the jurisdiction of the court,
by having herself appointed guardian *ad litem* for the pur-
pose, or in the same way submit the children to the jurisdic-
tion, waiving her own right to join. This is doubtless be-
cause of the fact that an infant, if under the age of fourteen
years, is incapable of initiating an action, and the mother
is the nearest possible (to use the words of the statute, Rem.
& Bal. Code, § 187) "relative or friend." But since the
suit may also be maintained in the name of the personal rep-
resentative for the benefit of the widow and children, and
since, as held in the *Copeland* case, knowledge and sanction
of the widow as to the bringing of the action must be shown,
and by parity of reasoning the sanction also of the minor
children, it would seem logically to follow that the widow may
initiate the action by the personal representative by giving
this consent or sanction for herself and for the children, and
we so hold.

The question is thus reduced to this: Was there com-
petent and sufficient evidence that the widow, for herself and
the minor children, authorized or sanctioned the bringing or
prosecution of this action for their benefit? The evidence
offered and submitted was as follows: (1) A letter in Bul-
garian, without signature, with an offer to prove that it was
in the handwriting of the decedent's sister. It was not
translated, but the interpreter stated that it purported to
be written for the widow who could not write, to the de-
cedent's brother Nick Koloff begging him to send her money
with which to support the children and buy the things neces-
sary therefor. This was, of course, incompetent for any pur-
pose. It authorized no suit and was moreover hearsay. (2)
A certificate, also in the Bulgarian language, with an offer
to prove that the signature thereto purported to be that of
the mayor and secretary of the city where the widow lived,
and that the paper purported to certify that Nick Koloff,
the administrator, is a brother of the decedent, and that the

three children therein named are the decedent's children, and stating that she authorized and directed Nick Koloff to bring the action for her and the children. The paper bears the impression of a rubber stamp which may be assumed to be the official seal of the mayor. There is no tenable theory upon which this paper can be held admissible for any purpose. It did not purport to be signed by the widow, either by mark or otherwise. As a certificate, it is not such as to constitute evidence either at common law or under any statute either Federal or of this state. (3) There was admitted in evidence, over objection that it was incompetent and that no foundation had been laid for its admission, a paper typewritten in the English language, purporting to be signed by Marie Koloff by mark, and purporting to authorize and sanction the bringing and prosecution of the action for her and the minor children, naming them. There were no witnesses to the signature. It purports to have been acknowledged in sufficient form before some officer whose title is written in a foreign language, presumably Bulgarian, authenticated by the impression of a rubber stamp or seal, the legend of which impression is also in a foreign language. None of the foreign words were translated by the interpreter. The venue is the city of Kostel, Kingdom of Bulgaria, and it is asserted that the certifying officer was the mayor of that place and the impression that of his official seal. Assuming, without deciding, that we would take judicial notice of this seal as proving the official character of the certificate of acknowledgment in a proper case, still this paper on such authentication was not properly admitted without further proof of its execution. It is not such an instrument as is required by any law of this state to be acknowledged. Rem. & Bal. Code, § 8758. It would not be entitled to record by reason of being acknowledged. Rem. & Bal. Code, § 8760. The purpose of acknowledgment is authentication for record. The certificate of acknowledgment only proves the execution of an instrument entitled by law to record when acknowledged.

Such a certificate would not prove the execution of a promissory note, a letter, or any other similar document. The instrument here in question lacks many of the elements of a power of attorney, either special or general. But even if it might be held a power of attorney it would not be authenticated by an acknowledgment. It is not a power to convey, or in any manner affecting, real estate, and is not entitled to record. Rem. & Bal. Code, § 8786. We know of no statute of this state, and have been cited to none, authorizing the authentication by acknowledgment and the recording of a power of attorney not affecting real estate, excepting certain powers relating to corporate agency and the like. Since the purpose of acknowledgment is authentication for record, and only as incidental thereto the certificate proves the execution of the instrument, it is only proof of the execution of an instrument entitled to be recorded. This is not such an instrument. The proof of the execution of the instrument should have been made by the testimony or deposition of some one who saw her sign it.

Other assignments of error go to the instructions. It will not be necessary to review them, since what we have said of the evidence sufficiently disposes of them.

Since this failure of proof does not go to the actual right of recovery, and since the action was properly brought if actually authorized, we would not be warranted in directing a dismissal. If the trial court had not held the acknowledgment a sufficient proof of execution, other proof might have been furnished. The judgment is therefore reversed, and the cause is remanded for a new trial, or for a dismissal without prejudice, at the respondent's option.

MOUNT, FULLERTON, MORRIS, and MAIN, JJ., concur.