PAWLICKI v. DETROIT UNITED RAILWAY.

1. DAMAGES—EARNING CAPACITY—EVIDENCE.

Impairment of plaintiff's ability to earn money was a proper element of damages, in an action for personal injuries, and, though he was not at the time of trial earning anything, what he had been able to earn when last at work, if the period was not too remote, might well tend to throw some light on his loss.

2. SAME—EARNING CAPACITY.

As bearing upon the destruction or impairment of plaintiff's earning powers, his previous trade or vocation and what he was last able to earn while following it, his age, physical condition and ability to work when injured, with any other facts which might tend to throw light upon that question, were admissible, not as an arbitrary measure of damages, but as a guide or assistance in enabling the jury to exercise a sound and just discretion in determining the proper amount.

3. SAME—ELEMENTS OF DAMAGES—EARNINGS.

The court was not in error in charging that plaintiff could recover any material loss he has sustained: wages, his ability to work during the time, etc.

4. SAME—EARNINGS—EVIDENCE.

As to the objection that it was error to tell the jury they could consider as an element of damages plaintiff's former rate of wages, because his testimony showed that he had quit his trade and was a retired shoemaker with no intention of working for wages, the instruction was not objectionable as there was testimony that his health was good and he proposed to open a shoe business. His fitness for that vocation and what he had recently been able to earn in it were the only available evidence from which his loss by reason of destruction of earning capacity could be weighed and was competent for the jury to consider for whatever light it might throw on the question of damages.

5. SAME—NEW TRIAL.

It was proper to show what wages would be open to the plaintiff in a business he understood and which he would have the right to resume but for his injuries.

6. SAME.

Held, that the court properly denied defendant's motion for a new trial and the damages were not excessive.[1]

Error to Wayne; Hally, J. Submitted April 6, 1916. (Docket No. 24.) Decided June 1, 1916.

Case by Anthony Pawlicki against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* and *A. B. Hall,* for appellant.

*August Cyrowski,* for appellee.

STEERE, J. Plaintiff was injured on the 19th of June, 1910, by falling from one of defendant's cars at the corner of Chene street and Harper avenue in the city of Detroit. The negligence charged consisted of suddenly starting the car while he was trying to alight,

---

[1]Generally as to excessiveness of verdict in action for personal injuries, see comprehensive note in L. R. A. 1915F, 30.

without giving him reasonable time in which to safely do so. Plaintiff, who resided in the vicinity of the accident, was a passenger on a north-bound Baker street car, which ran along Chene street past his home, and on nearing Harper avenue gave a signal to stop the car. It stopped on the north or farther side of Harper avenue, at just what point is in dispute. Plaintiff and his witnesses testified the stop was very short; that other persons got off while he was alighting, and just as he attempted to do so with all reasonable expedition, standing with one foot on the running board and holding with one hand to a handle on the car, in the act of stepping off, the conductor gave a signal and the car started suddenly, with a jerk, while he was in an unstable position either for alighting or remaining upon the car, to which he clung for a distance, and, being unable to continue his hold, fell, or was thrown, striking his head upon the brick pavement, where he lay unconscious until carried to his home, being seriously and permanently injured. He describes the accident as follows:

"I got hold of the handle, and one foot on the step or running board, and tried to get off the car. When I was ready to put the other foot down, the car started and I fell. * * * I held onto the handle with one foot on the running board while the car went a distance of 75 feet; then I was lying on the ground unconscious."

Defendant's contradictory evidence and explanation of the accident were that plaintiff tried to alight from the car before it stopped, or had reached its regular stopping place, which was farther north, beyond a switch on a curve in the track at that corner, and that he fell in attempting to alight as the car swung upon the curve before stopping; the accident being wholly attributable to his own negligence in attempting to leave the car before it stopped.

A verdict and judgment were rendered in plaintiff's favor for the sum of $2,000. Defendant seeks a reversal under the following assignments of error:

"(1) The court erred in permitting the following question and answer over objection:

"'Q. Mr. Pawlicki, the last time you were employed before this accident, how much did you earn per day or week?

"'A. $12 per week.'

"(2) The court erred in denying the motion to strike out such answer.

"(3) The court erred in overruling the motion of defendant for a new trial."

The claimed errors in permitting and refusing to strike out plaintiff's testimony as to what he earned per week when last employed before the accident is predicated on his testimony that he was idle at that time, had not been employed since coming to Detroit, and did not contemplate working at his trade as an employee again. His evidence upon that subject disclosed that he was about 65 years of age when injured, up to which time he was always in good health and never had a doctor; that previous to removing with his wife to Detroit, some six months before, where their children were located, he lived in Stamford, Conn., and worked in a shoe factory for $12 per week; that he removed to Detroit because he had children there and to better his condition, then having a little money and intending to open a shoe store there, for which he expected his son, who worked for the Packard Automobile Company, would build an addition to the place where plaintiff lived, and run, or help him run, the business; that he first visited his children for a time, and then was waiting and looking for a place of business until the accident from which he never recovered, and as a result of which he had since been unable to work or engage in business.

Impairment of plaintiff's ability to earn money was

a proper element of damages, and, although not then earning anything, what he had been able to earn when last at work, if the period was not too remote, might well tend to throw some light on his loss in that particular. It is seldom in tort actions, and particularly for personal injuries, that exact data can be furnished or found by which to accurately measure the various elements recognized as composing adequate compensation for the loss or injury sustained. The law does not require impossibilities, nor demand a higher degree of certainty than the nature of the case admits. Reasonable latitude is therefore necessarily allowed in the range of inquiry as to damages in actions *ex delicto*, for which no fixed rule of exclusion or inclusion can be formulated; but it is recognized as a general proposition that where the damages, or any part of them, cannot be ascertained with certainty, it is permissible to lay before the jury "all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." *Allison* v. *Chandler*, 11 Mich. 542. And as bearing upon the destruction or impairment of plaintiff's earning powers his previous trade or vocation and what he was last able to earn while following it, his age, physical condition, and ability to work when injured, with any other facts which might tend to throw light upon that question, were admissible, "not as furnishing an arbitrary measure of damages, but as a guide or assistance in enabling the jury to exercise a sound and just discretion in determining the proper amount," if any. 13 Cyc. pp. 202, 203.

Defendant's counsel quote and urge as error the following excerpt from that portion of the charge relating to the elements of damage which it was per-

missible for the jury to consider if they found plaintiff entitled to recover:

"Any material loss that he has sustained, wages, his ability to work during the time, his ability to work in the future," etc.

We think the propriety of this reference to wages, of which particular complaint is made, goes with the admissibility of plaintiff's testimony as to the wages he was earning when he last worked.

It is contended that it was error to tell the jury they could consider as an element of damages plaintiff's former rate of wages, because his testimony showed that he had quit his trade and was a "retired shoe-maker," with no intention of again working for wages. He testified that his health was good, and it was his intention to open a shoe business to better his condition, so that he would not have to work as before. His prospective profits in a contemplated business were manifestly not open to proof. He had voluntarily quit his previous employment, which was of such a nature that he could in all probability resume it. His fitness for that vocation and what he had recently been able to earn in it were the only available evidence from which his loss by reason of destruction of earning capacity could be weighed, and we think was clearly competent for the jury to take into consideration, for whatever light it might throw on the question of damages. In *Peterson* v. *Traction Co.*, 23 Wash. 615 (63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586), it was held that, although there was no claim plaintiff intended to return to a former calling, which he had not followed for three years previous to his injury, proof of the wages he had earned when engaged in it was admissible as bearing upon his damages by reason of impaired ability to earn; the court saying:

"It was proper to show what wages would be open to the plaintiff in a business he understood, and which

he would have the right to resume, were it not for the injuries which prevented him from again entering that business."

See, also (to the same effect), *Grimmelman* v. *Railway Co.*, 101 Iowa, 74 (70 N. W. 90), and (as to remoteness) *Sias* v. *Reed City*, 103 Mich. 312 (61 N. W. 502).

It is further contended that defendant's motion for a new trial should have been granted on the ground that the verdict was against the evidence and excessive, and particularly as—

"the weight of the medical testimony was overwhelmingly in favor of defendant, but by the verdict was evidently disregarded by the jury, and because of the plaintiff's appearance, caused by a complication of serious diseases, an excessive verdict was awarded."

Both sides introduced medical testimony. The physician who attended plaintiff gave evidence in his behalf. He testified that he found plaintiff had a contused wound in the back of the head, with a hemorrhage from the ear, some broken ribs, bruises on the elbow, which he thought might be a fracture, a ruptured eardrum, and had suffered a nervous shock the effects of which would be permanent; that the injuries were serious and painful, requiring his constant attention for several weeks. This witness had, however, made a report of plaintiff's injuries to defendant shortly after the accident, for which he was paid, describing them as bruises on various parts of the body, not mentioning the ruptured eardrum, fractured ribs, or serious nervous shock, stated the treatment he had prescribed was "rest" and "probable results good." His impertinent answers and lame explanation of these discrepancies, as to which all that defendant contends may be conceded, were, however, matters for the jury rather than the court.

The expert testimony of the physician called by defendant, who first made an examination of plaintiff over two years after the accident, was to the effect that he was suffering from Bright's disease, to which all his other ailments were attributable, and which could not be, and was not, due to the accident. Eliminating the comparative intelligence and veracity of the medical experts, which it was for the jury to weigh, plaintiff's own testimony as to how the accident occurred is supported by that of his wife and granddaughter, who were with him on the car, and a butcher, who saw it from his store on the corner and helped carry him home. Members of his family testified to the seriousness of his injuries, and that while a healthy man before the accident he had been unwell in various ways, in declining health, unable to work or entirely take care of himself. His wife testified that he was in bed six weeks, had three physicians, has since been troubled with dizziness and nervous attacks, could not even do little things around the house, and she had to assist him to walk around. He testified to the effect of the accident upon him as follows:

"I have done no work since, because I cannot; I am too nervous. My wife has to lace my shoes. I can't bring coal to the stove; my hands are shaking, and I am nervous; when I try to lift anything, I can't, for I am nervous. I have today pain in my side; right after the accident I had these pains, and before I was always well. I suffer continually, and I put plasters on my side, for it always pains me there. When I stop I get dizzy. Right after the accident I had vomiting spells. I had no other injuries, only my head, side, and arm. * * * I was always healthy. * * * I never had a doctor attend me. My first doctor was at the accident."

The credibility of all these witnesses was for the jury, and there is abundant testimony, if believed, to support the verdict, both as to the nature of the acci-

dent and amount of damages awarded. We are not prepared to say from this record that the verdict is, as a matter of law, excessive or against the overwhelming weight of evidence.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.