[No. 7391. Department One. October 27, 1909.]

J. D. SMITH, *Respondent*, v. HEWITT-LEA LUMBER COMPANY, *Appellant.*[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—SCOPE OF EMPLOYMENT—EVIDENCE—SUFFICIENCY. In an action for personal injuries sustained by an oiler in a mill, caught by the automatic starting of a carriage, the evidence does not show, as a matter of law, that he was guilty of contributory negligence, or was loitering about as a volunteer, instead of in the performance of his duties, from the fact that, while he was on his way to oil machinery, he was momentarily interrupted by a sawyer who informed him that the machinery was stalled, and that he looked at the friction and advised the saw-

[1]Reported in 104 Pac. 651.

yer, where it further appears that, after a momentary interruption and show of interest that was natural under the circumstances, he was going on about his duty at the time he was injured.

SAME — CONTRIBUTORY NEGLIGENCE — PRESUMPTION OF RISKS— CHOICE OF WAYS. An oiler, on his way to oil machinery, is not guilty of contributory negligence and does not assume the risk, as a matter of law, in choosing a passageway between a carriage and skids, which was usually taken by employees, when he might have gone another way, where each way was in some degree hazardous, and no passageway had been specially provided by the employer.

SAME—NEGLIGENCE OF MASTER—DEFECTIVE APPLIANCE—MACHIN-ERY IN COMMON USE—QUESTION FOR JURY. The negligence of the master in using a lever to start a carriage in a mill which was not provided with any guard, clutch, or contrivance to hold the lever stationary and prevent its falling and accidentally starting the car-riage, is for the jury, notwithstanding testimony that the machine was as manufactured and advertised and in common use, where that evidence was disputed and there was other testimony that a simple, inexpensive guard in common use would reduce the danger of operation.

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS. Error cannot be assigned upon the offering of incompetent evidence and improper conduct of counsel, where no exceptions are reserved, in the absence of a positive showing of prejudice or a verdict contrary to the clear preponderance of the evidence.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for personal injuries for $6,375 is excessive, and should be reduced to $4,000, where it appears that the plaintiff, employed as an oiler, at $2.50 a day, 50 years of age, sustained an injury to the ankle, re-stricting its movement somewhat and causing pain, and requiring him to walk with a cane, that he was in the hospital two weeks and on crutches five months, and he was allowed to testify as to a much larger earning capacity in another employment in which he had not engaged for some time and did not expect to engage in (MORRIS, J., dissenting).

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 6, 1908, upon the verdict of a jury rendered in favor of the plaintiff for $6,375, for personal injuries sustained by an employee in a shingle mill. Affirmed on condition of remitting $2,375.

*Peters & Powell*, for appellant.

*Roney & Loveless* and *Walter Fulton*, for respondent.

CHADWICK, J.—Defendant owns and operates a shingle mill at Wilburton, in King county. Plaintiff was in the employ of defendant as oiler, a duty he had performed for a month or more prior to March 13, 1906, although he had been employed about the mill since December 24, 1905. A part of the mill equipment was a set of skids from which the cants were rolled onto a cut-off carriage, where they were cut into bolts for convenience in manufacturing. The cut-off carriage rested on wheels which ran over two rails. The play of the carriage was between four and five feet, so that when it was at its furthest limit from the skidway there was an open passage between it and the skids of that width. The carriage was controlled by a lever situated at the west end of the cut-off carriage. This lever operated an in and out friction clutch, and when moved in one way it gathered power to move the carriage toward the skids, and when moved the other way the carriage was impelled toward the saw. When the lever stood upright, the carriage was stationary, whatever its position might be on the track. There was no catch, clutch, guards, blocks, or counterweights to hold the lever in place when once set by the cut-off sawyer.

At the time of the accident, there was also employed as cut-off sawyer one Boies. On March 13, shortly after the machinery had been started after the dinner hour, plaintiff oiled the machinery on the lower floor of the mill, and ascended a stairway at the north end of the mill from whence he intended to go to the south end of the mill to oil the slasher saws. When he reached the upper floor, he found Boies near the stairway, and the cut-off carriage standing still. Boies told him that the friction clutch would not work, and that the machinery had stalled. Plaintiff looked at the friction, and then told Boies to try it again. This Boies says he started to do. His way lead between the carriage and the skids. At the time the carriage was so standing that there was a space of from twelve to fourteen inches through which he passed. Appellant followed him at a distance of four or

five feet.   This was the usual and customary way of going from one end of the mill to the other, although they might have climbed the skids and cants, passed over the kneebolter's table, or gone around on the outside of the mill.   Just as plaintiff was going between the carriage and the skids, and at a time when he was stepping over the timber on which the track was laid, the lever fell, from no apparent cause unless from the vibration of other machinery.   The carriage started toward the skids, catching plaintiff, and injuring his foot and ankle so that he was permanently injured.   He recovered a verdict in the sum of $6,375, and defendant has appealed.

Many assignments of error are made, but all of them raise the legal defenses of contributory negligence, assumption of risk, and one other which we shall discuss later.   The record shows that the right of respondent to maintain his recovery depends upon two questions of fact which, if properly resolved by the jury, are decisive of the case.   Appellant alleges the fact to be that respondent would not have been injured had he not negligently loitered in a place of apparent danger to examine the friction clutch.   It seeks to hold him to the legal effect of the testimony of Boies, which it quotes as follows:

"Q. And he was trying to find out what was the matter with it at that time?   A. He simply told me to try it again and see if he could see what was the trouble.   Q. You were going up there to try the lever?   A. Yes.   Q. And he was going to find what was the matter with the machine?   A. I think so. . . . Q. He looked at the friction wheel?   A. Yes, I think he did notice it and started to walk around the carriage."

Admitting that this testimony, standing alone, would be enough to support the charge of contributory negligence, when taken in connection with other testimony of the same witness and the testimony of the respondent, it does not bear the construction put upon it by counsel for appellant.   Respondent had testified that, after his interruption, he was pro-

ceeding in his usual way to the slasher saws, and that it was not his duty—as indeed it was not—to fix the clutch, and that he intended to tell the millwright if he saw him. There was sufficient to warrant the jury in finding that, after allowing the momentary interruption and show of interest and word of advice, which were natural under the circumstances and a thing which the average man would do, he was going on about his duty. The disputed fact was thus brought to the attention of the jury and was decided against the appellant.

Nor do we think the jury erred in finding against the appellant on the assumption of risk. The evidence is abundant to justify the finding that respondent was proceeding in the usual way, and but for the unexplained fall of the lever it would have been perfectly safe. When there is more than one way that the employee might have gone through the mill, each in some degree hazardous, but no passageway is provided especially by the employer, and the employee goes the way usually taken by the employees, the master is charged with notice of the fact, and the employee will not be charged under such circumstances with contributory negligence or assumption of risk. *Jackson v. Danaher Lumber Co.*, 53 Wash. 596, 102 Pac. 416.

There was also testimony to the effect that respondent did not know of the propensity of the lever to fall, and seeing it in an upright position, he had no reason to suspect that it would fall.

Neither can we hold, as a matter of law, as against the finding of the jury, that respondent had abandoned his duty as an oiler and become a volunteer in the performance of the duty of another, so that he would be barred of recovery. We find nothing in his testimony, or in the testimony of any other witness, that would warrant the conclusion that he was doing, or about to do, anything inconsistent with his duty.

Appellant introduced evidence tending to show that it was

not customary to guard the lever on machines, operated as this carriage was, with an in and out friction clutch; that the machine as advertised by firms making standard machines such as this one was had no contrivance to hold the lever in place; that having used the machinery that is in ordinary and common use in the line of business in which appellant was then engaged, it had discharged its full duty, and cannot be held liable for an accident that might have been prevented by the use of different machines. Upon this point the case of *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385, is cited. In that case the character of the machinery was not in issue. The court said:

"The evidence in this case shows—and the fact is not disputed— that machinery of the character under consideration . . . is in common use in foundries and in other like shops."

But here the question was submitted to the jury upon a clear conflict of the evidence. More than that, there was testimony going to show that, by the employment of one of several simple and inexpensive guards, the lever could have been secured so that there would have been no possibility of accident. In *Towle v. Stimson Mill Co.*, 33 Wash. 305, 74 Pac. 471, the machine started automatically, and, among the defenses urged, was one that the machine was of standard grade and such as was in general use and reasonably safe for the purposes intended. Yet a recovery was allowed to stand. The logic of that case is that the *Hoffman* case only applies where the fact is not disputed. In the case of *Crooker v. Pacific Lounge & Mattress Co.*, 29 Wash. 30, 69 Pac. 359, the court said:

"If there can be placed upon a machine a simple, inexpensive guard, in common use, which will obviously reduce the danger of its operation, such fact surely may be taken into consideration, in connection with the other facts, to determine whether the master in the particular instance has acted as an ordinarily prudent person would have done."

See, also, *Hencke v. Babcock*, 24 Wash. 556, 64 Pac. 755.

Counsel for appellant cites many cases, with one exception against railroad companies, where a recovery was denied to the plaintiff when it appeared that he had attempted to go between cars, depending on the cars remaining stationary. These cases do not seem to us to be in point. In all of them it is shown that the risk assumed is such as would have been shunned by a man of ordinary prudence. A chance was taken. But in the case at bar respondent knew that the moving of the carriage depended upon the lever. He had a right to assume that, so long as the lever stood upright, in plain sight, unattended, there would be no movement of the carriage. He had frequently passed that way, the carriage being held stationary for that purpose. This case falls rather within the rule of the *Crooker* case, where a recovery was allowed upon facts not at all dissimilar to the showing made in this case.

We have read the instructions of the court and find that, notwithstanding the refusal of the court to give a number of requested instructions, the issues were fairly stated and proper instructions given by the court. So that no prejudice resulted to the appellant on that account.

Other errors are assigned on an offer of testimony which it is alleged counsel for respondent knew to be incompetent, and upon misconduct of counsel, and a strong argument made to the effect that a party should not, under such circumstances, be put to the necessity of reserving an exception or asking the court to charge the jury to disabuse their minds of any impression made by the unwarranted offer or conduct. Whatever may be said in this behalf—and there is much—trials would never be ended if courts presume error from every unwarranted incident occurring at the trial. In the absence of a positive showing of prejudice, or a verdict contrary to a clear preponderance of the evidence, where exception is not reserved to the alleged misconduct, we must presume that the trial court has protected the interest of the

litigant by timely observation to the jury whenever it was necessary.

It is further contended that the verdict of the jury was excessive. Respondent was about fifty years of age when injured. He was in the hospital for two weeks, and was treated for a month or two thereafter; was on crutches until about August 1, following the accident; his ankle and foot were crushed so that, in healing, the joint is enlarged. He says he suffers some pain all the time, and is compelled to walk with a cane. The testimony of the physicians shows that the bones of his ankle are healed, but the injured ankle is from a half to three-quarters of an inch larger than the other. The ankle is not normal and will probably never be quite so. The sidewise motion of the foot is about normal, but the up and down motion at the instep is restricted. The consequences of the injury might have been overcome to a greater extent by a more vigorous treatment at the time, and might now be improved by a like treatment. Respondent has followed, to some extent, the trade of trunkmaker and carpenter, in which occupations he had earned from three to four dollars a day, although he had "farmed a good part" of his life. He had been a shareholder in the mill in which he was injured, prior to the time it was purchased by appellant. Following the accident, he again went to work for appellant, taking other employment at a wage of $2.50 per day, the same wages he had received before the accident. He kept this job about a month and a half, or until he quit it to bring this suit.

Damages in a case of this kind are to be adjusted on the theory of compensation rather than punishment, and when so considered the verdict should be reduced. The earning capacity of the claimant should be measured, not by what a man might earn in another employment, but by what he is earning when injured, unless it be shown that the present employment is temporary; otherwise damages would be speculative. So in this case, the jury must have assessed the damages upon the basis of a wage which respondent testified he was able to earn

in another employment, but one in which he was not engaged, nor was there any testimony to show that he expected or intended to engage in it. We believe the verdict was excessive on the theory that a loss of earning capacity was not sufficiently shown to warrant the amount returned, and that it should be reduced in the sum of $2,375. · If respondent elects to accept the sum of $4,000 within ten days after the remittitur is filed, the case will be affirmed; otherwise a new trial is granted. Respondent will recover costs in this court.

RUDKIN, C. J., FULLERTON, and GOSE, JJ., concur.

MORRIS, J. (dissenting)—I dissent. The amount of the verdict, considering the character and extent of the injury, especially in view of the testimony that the condition of respondent's ankle is largely due to his refusal to submit to proper treatment, is, to my mind,· conclusive that the jury in determining their verdict, were influenced by some improper motive, and that the "excessive damages" found by the majority opinion shows the influence of passion or prejudice. For this reason the judgment should be reversed and a new trial ordered.