[No. 9084. Department One. December 27, 1910.]

JOHN HALL, *Respondent*, v. NORTHWEST LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURIES — NEGLIGENCE — SIGNALS — SAFE PLACE. It is actionable negligence for the foreman of a log loading crew to give the signal for the starting of the winch before the tong tender had time to get out of the way of the log to which he had attached the tongs for the purpose of loading it onto a car.

MASTER AND SERVANT—VICE PRINCIPAL—FOREMAN—DUTY OF SUPERINTENDENCE. A foreman of a log loading crew, where the work requires concert of action under immediate and direct supervision, is a vice principal and not a fellow servant of the other members of the crew as to the duty of superintendence delegated to him by the master.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether a tong tender was guilty of contributory negligence in not placing the tongs in the proper position on the log to be moved, is for the jury, when that was a disputed question.

APPEAL—OBJECTIONS—ADMISSION OF EVIDENCE. Error cannot be predicated on the admission of evidence unless the specific objection urged was made at the trial.

TRIAL—INSTRUCTIONS—REQUESTS. It is not necessary that instructions be given in the language requested, where the same were fairly presented.

TRIAL—MISCONDUCT OF JUDGE. Remarks of the trial judge during the course of the trial are not ground for reversal, where they could not have been prejudicial.

APPEAL—MISCONDUCT OF JUDGE—TRIAL—POLLING JURY. It is not prejudicial error, in polling a jury, for the court to make additional inquiries as to how each juror found on certain questions.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for ten thousand dollars for personal injuries through the breaking of a leg is not excessive, where the broken bone did not unite after two operations, the plaintiff was only twenty-three years of age, and cannot work in a standing position.

COSTS—WITNESS FEES—MILEAGE. Mileage for witnesses may be first claimed in the cost bill, although the witnesses did not claim the same in reporting their daily attendance to the court.

[1] Reported in 112 Pac. 369.

COSTS—DISBURSEMENTS—INTERPRETER'S FEES. The reasonable fees of an interpreter are properly allowed as disbursements, when necessarily incurred.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 18, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a logging camp. Affirmed.

*John P. Hartman* and *Byers & Byers*, for appellant.

*Brady & Rummens*, for respondent.

FULLERTON, J.—The respondent was injured while employed in the logging camp of the appellant, and brought the present action to recover therefor. There is no substantial dispute in the record as to cause of the accident. The appellant was engaged in bringing logs in from the woods and loading them on cars. In the operation, it made use of two distinct apparatuses, the first of which was known as a Lidgerwood skidder. This consisted of a wire cable stretched from the loading place into the woods over which was operated the skidder proper, the skidder being a couple of sheave wheels fastened in a frame in such a manner as to roll on the wire cable while carrying a weight swinging below. The method of drawing logs in from the woods was to fasten one end onto the skidder, hoist it up sufficiently high to clear obstructions, and then draw it in to the loading place by means of a cable operated by a steam winch. The second apparatus was used for loading the logs. It consisted of a pulley fastened to supports directly over the railway track, through which was run a wire cable leading from the drum of another steam winch. The end of the cable passing through the pulley was fastened to a pair of hooks, locally known as tongs. These tongs would be fastened into a log, which would be lifted from the ground onto the railway cars by means of a pull on the cable by the steam winch. The loading crew consisted of the winchman, the loader, and the tong tender; it being the

duty of the last named to fasten the tongs into the logs pre-
·paratory to lifting them onto the cars.

· The work of the logging camp was under the direction of
.one Dan Williams, and on the day of the injury he was super-
intending the loading of the cars. After two cars had been
loaded and the third one almost finished, Williams directed
the respondent to hitch onto a log some forty feet in length
that lay some little distance back from the overhead pulley in
the line of the path of the skidder that brought the logs in
from the woods. The respondent gathered up the tongs and
proceeded towards the log pointed out, and had nearly reached
it when he noticed the skidder coming in from the woods
dragging a log. It was almost upon him, and he hurriedly
fastened the tongs and sought to escape by running in the
direction of the railroad track, at right angles to the track
of the approaching log. Just as he started, Williams gave
the signal to pull away on the log to which the tongs were
hooked. The winchman obeyed the signal, starting the log
somewhat quickly. Instead of the log pulling straight out
as was expected, the front end caught on a stump, which
caused the other end to swing around in the direction the re-
spondent was endeavoring to make his escape. The log
struck him before he could get beyond its reach, the blow
breaking the femur of his left leg and otherwise injuring
him. At the trial the jury returned a verdict in his favor for
ten thousand dollars, and judgment was entered for this sum.
This appeal was taken therefrom.

The assignments of error first to be noticed relate to the
sufficiency of the evidence; it being contended that the evi-
dence fails to show any negligence on the part of the appel-
lant which was the proximate cause of the injury. But we
think negligence was clearly shown. It lies in the foreman's
act of starting the haul on the log before the respondent was
·out of the zone of danger. No doubt it was the foreman's
desire to get the log out of the way of the incoming log

brought by the skidder, but from its position he ought to have forseen that it was liable to catch upon some one of the intervening stumps and swing around to one side or the other. Common prudence dictated that he should have waited until the respondent was clear of the swinging end. At least these were questions for the jury, and were properly submitted to them by the court.

But it is said that it was no duty of the master to superintend the work in which the respondent was engaged, and hence, when the foreman undertook to direct the work, his acts were but those of a fellow servant for which the master is not liable. But the work was of such a character as to require concert of action on the part of the several workmen engaged in its performance, and could not proceed with any degree of efficiency without the immediate and direct supervision of someone. When the master, therefore, took the burden upon itself of selecting such a supervisor, it became responsible for the acts of the person so selected, and if he performed his duties negligently, it became responsible to any one injured by such negligent performance. *Anderson v. Globe Nav. Co.*, 57 Wash. 502, 107 Pac. 376; *Engelking v. Spokane*, 59 Wash. 446, 110 Pac. 25; *Olson v. Erickson*, 53 Wash. 458, 102 Pac. 400.

What might have been the rule had the master employed the men and directed them to do the work required in any manner they saw fit, and they had chosen their own supervisor, we need not inquire. But where the master employs the men as laborers merely, reserving to himself the right to superintend and direct their work and the manner in which they shall perform the work, he becomes liable for a negligent performance of the duty of superintendence, no matter whether he undertakes to perform the duty individually or entrusts it to another. In such a case the person so selected is the master's representative, not the representative of the servants.

It is next insisted that the respondent was guilty of con-

tributory negligence. It is assumed that the tongs were not placed in a proper position upon the log it was intended to haul, and that the accident was the result of their improper placement. But this was a disputed question, and as such, for the jury.

The appellant next objects that certain X-ray photographs of the respondent's injured leg were admitted in evidence without sufficient identification. But an examination of the objection made by counsel to their introduction, made at the time they were offered, does not include this specific objection. They were clearly admissible as against the objections made to their introduction, and error cannot be predicated in this court on objections not suggested to the trial court.

It is further objected that the court erred in refusing to give certain instructions requested by the appellant. On the trial of the cause it was sought to show in defense of the respondent's action that one Dan Williams and not the appellant was operating the logging camp in which the respondent was injured, and that he, if any one, was responsible for any injury received by the appellant. Certain instructions were asked presenting this question to the jury, which the court gave in a modified form. The modification consisted in stating more fully to the jury the matters to be considered by them in arriving at their verdict than were contained in the requested instructions. But we find nothing in the modification made that is improper. The appellant's contention was fully and fairly presented. This satisfied the rule. As we have often said, it is not necessary that the court give to the jury a requested instruction in the language in which it is presented; it is sufficient if the instruction is given in substance.

The appellant complains that it was prevented from having a fair trial because of certain remarks made by the judge during the course of the trial. But an examination of the record leading up to them convinces us that they could not have been prejudicial. They were, with the exception of one or two instances, pertinent to the matter under consideration;

the only fault that can be found with them being that they were couched in language somewhat redundant and not at all times very well chosen. Those that seem to have no pertinency to the particular matter in hand seem to us also to be without prejudice; the one thought to be most flagrant being a question asking if certain counsel, whose names appeared in the pleadings, were not the general attorneys for an officer of the appellant. This is thought to be prejudicial because certain other attorneys who appeared for the appellant were regularly employed counsel of a surety company and that the inquiry tended to make that fact known to the jury, but clearly, there is no justification for this inference.

On polling the jury after they had returned their verdict, the trial judge inquired of each juror not only concerning the verdict returned, but how he found on certain questions presented necessary to be passed upon in order to arrive at the verdict returned. It is complained that this was error, but we think otherwise. It was perhaps unnecessary to ask the several jurors anything more than the single question, "Is this your verdict," but it could not be so far prejudicial to the appellant as to require a reversal to make additional inquiries. *Norman v. Hopper*, 38 Wash. 415, 80 Pac. 551.

It is objected that the verdict is excessive. It is large, but the respondent's injuries are great. There has been no union of the broken bone, although he has submitted to two operations, one of which consisted in wiring the ends of the bone together in an effort to make them unite, and the experts differed as to the probability of its ever being in any better condition than it now is. Moreover, the respondent was only twenty-three years of age when the injury occurred, and is incapacitated from following any pursuit in life that requires a standing position. Under these circumstances we cannot think the verdict excessive.

The court allowed as disbursements certain mileage for witnesses who did not make a claim for the same to the clerk when reporting their daily attendance, and certain fees paid

an interpreter. The statute relating to the necessity for claiming mileage, in order to enable a party to recover the same, is somewhat obscure, but we think it may properly be claimed for the first time in the cost bill. The fees of the interpreter, in so far as they were reasonable, were clearly taxable as part of the respondent's disbursements. He was compelled to pay them in order to obtain the testimony of his witnesses, and has a right to their return.

The judgment is affirmed.

RUDKIN, C. J., GOSE, PARKER, and MOUNT, JJ., concur.