[No. 9674.   Department Two.   January 4, 1912.]

# W. J. Martin, *Respondent*, v. Samuel Hill, *Appellant*.[1]

Master and Servant—Negligence of Master—Lack of Superintendence. Where the work of taking down a gin pole was in charge of a foreman, who released a guy rope supporting the pole while men attempted to catch and hold it, the work was such as to require careful superintendence, rendering the master liable for lack thereof, whether the fall of the pole after it reached a certain angle was due to the laws of gravitation or to a panic of the men who were to support the pole.

Same—Contributory Negligence — Assumption of Risks — Evidence—Sufficiency. A carpenter does not assume the risks and is not guilty of contributory negligence, as a matter of law, in responding to a request to lend a hand in taking down a gin pole, so as to preclude a recovery when the pole fell through lack of superintendence, on the release of a guy rope, either by the laws of gravitation or by the panic of the men, especially where other skilled men accepted equal risks.

Same—Contributory Negligence—Acts in Emergency—Warning. A servant is not precluded from recovering from the fact that he did not save himself in an emergency on a warning to "look out," where he attempted to do so, although others more favorably situated got out of danger.

Same—Fellow Servants—Act of Superintendence. Where the work of taking down a gin pole required con-association and concert of action and could not proceed safely without supervision, the master is liable for the want of proper supervision, and one selected by him to control the matter is not a fellow servant of the men assisting in the work.

Damages—Personal Injuries—Excessive Verdict. A verdict for $4,495.95 for injuries sustained by a carpenter through the fall of a gin pole is not excessive, where he suffered a compound fracture of the leg, which was shortened, he was confined to the hospital from April 6 to September 6, and suffers constant rheumatic pains; although he was able to go to work in January at four dollars a day, having formerly earned five dollars a day.

Appeal from a judgment of the superior court for King county, Main, J., entered March 4, 1911, upon the verdict of a jury rendered in favor of the plaintiff, for the sum of

[1]Reported in 119 Pac. 849.

$4,495.95, in an action for personal injuries sustained by a carpenter engaged in the construction of defendant's house. Affirmed.

*McCafferty, Robinson & Godfrey*, for appellant.

*James T. Lawler*, for respondent.

CHADWICK, J.—Plaintiff, who is a carpenter, was engaged in taking down forms on a house built of concrete. The house was owned by the defendant. A gin pole had been set up on the roof of the building; and having performed its office, the carpenter's foreman, one Thompson, said in the presence and hearing of several workmen engaged on or about the roof, "Come, boys, and give us a hand to take down that gin pole." Plaintiff left his task and with others prepared to assist in lowering the pole, which was some thirty-five feet high and made up of sections of rolled iron pipe, six inches in diameter at the bottom and about four inches at the top. The number of men on the roof, and whether all of them lent a hand, were disputed questions of fact; but it is certain that plaintiff stooped down and took hold of the pole near the bottom to hold it in a frame or seat made of two by four scantling, so as to keep it from slipping. One workman, and possibly two others, took positions so as to reach the pole as high up as possible so as to let it down gradually. Others held two guy ropes that had been used to hold the pole in place. These ropes performed no office other than to steady and direct the pole as it was lowered. Thompson went down to man the main guy rope, which was attached to a telephone pole on the street and about seventy-five feet away. The weight of the pole was upon this guy rope. When he started to lower the pole and it had come to an angle of about forty-five degrees, one of the workmen said, "Look out. Let go," and all of those engaged let go of the pole with the exception of the respondent who was caught under it, and he suffered a compound fracture of the lower limb.

It is alleged that the foreman, "without warning, completely released the guy rope which he was handling, thereby causing said gin pole to fall with great force, and in doing so it came in contact with plaintiff's leg in proximity to the ankle joint, breaking the same, and causing the damages hereinafter complained of."

Appellant attacks the sufficiency of the complaint and the evidence, and, as he well says, the same principles of law govern both contentions, and then proceeds to discuss them together. It is contended that there was no evidence to sustain the allegations that appellant's foreman "wholly released the head guy rope." Whether those on the roof could see the foreman when releasing the rope was a disputed fact, and we think it may be conceded that there is no positive testimony to the effect that the guy rope was purposely released. It was the contention of the appellant, upon the trial and here, that the rope was not in fact released, but following the natural law of gravity, it fell of its own weight when it reached a sufficient angle, and that those who undertook to sustain it became panic stricken and released their support; otherwise the accident would not have happened.

But it seems to us that the legal consequences would be the same whether the foreman released the guy rope or it fell when it reached a point where the law of gravity intervened to thwart the plans of those engaged in the work. Having assumed to release and pay out the guy rope, knowing that the weight of the pole would be upon it, it was the duty of the foreman to exercise due care to protect those who had complied with his request to lend a hand; or, if the other theory be adopted, then we are of the opinion that the character of the work was such as to call for a more careful superintendence on the part of the appellant. In the case of *Engelking v. Spokane*, 59 Wash. 446, 110 Pac. 25, 29 L. R. A. (N. S.) 481, a somewhat similar contention was made; that is to say, that the accident occurred as the result of a

violation of a natural law, and that by the exercise of those faculties with which all men are endowed, the danger might have been foreseen and avoided.   We there said:

"It is true that, as viewed by learned counsel and by those versed in the laws of mechanics, the result might have been expected as a consequence of the violation of natural laws.   But it is not to be expected that a common laborer will have knowledge of, or be bound by, natural laws, unless they are so obvious as to prompt the instinct of self-preservation in men of ordinary prudence and understanding."

This case is even stronger than the *Engelking* case; for, although respondent be charged with a knowledge of the law of gravitation, his apparent assumption that those who stood up to receive the pole as it came down would be able to hold it and lower it without danger to him was made an issue for the jury to decide.

Nor can we agree with counsel for appellant that the affirmative defenses were so made out as to warrant the court in setting aside the verdict of the jury.   It may be true that respondent was not bound to comply with the request to lend a hand, but it does not follow that, because he did so, he is to be charged with contributory negligence.   The work of the master was at hand.   The evidence shows that Thompson laid out the work and directed the men, and it is the common experience of mankind that in building houses and in the prosecution of work of like character, there is a time when artisans and mechanics are called upon to act in common or in concert, to do that which one or even a few men could not do.   When obedience is the natural thing to do, men who obey will not be held to be volunteers.   To hold that one who so acts is *prima facie* guilty of contributory negligence (and that would be the legal effect of such holding) would be to ignore that impulse which prompts men to help others, and to put an unwarranted burden upon the builder; for if such work is to be held to be extra work requiring

extra men, the harshness of the rule would fall in the end upon the owner rather than the employee.

Nor is respondent to be charged because he did not get away or save himself when some one gave the warning to "look out." The fact that others did save themselves is not evidence in itself conclusive that he might have done so. It will be remembered that respondent was in a stooping position, and had not the advantage of the others who were on their feet. But there is evidence tending to show that he did attempt to save himself. Hence this issue is foreclosed by the verdict, for whether he might have done so is a relative question which has been decided in his favor.

Appellant insists that the danger was open and obvious, and that respondent cannot recover because he assumed the risk. Whether the danger was such that a man of ordinary prudence would have refrained from doing the work was a question for the jury, to be determined in the light of all the evidence. An assumption of risk involves a mental process, or a charge of it, which may be likened to notice, express or implied. It must appear that the danger was in fact known and appreciated, or that its character was such that a man of ordinary prudence would, in the exercise of the instinct of self-preservation, have refused to assume it. The fact that three, or possibly more, men, all mechanics, some of whom were witnesses (and they seem to be men of intelligence) put themselves in positions of almost equal danger, would in itself seem to be enough to show that a court would not be warranted in holding as a matter of law that respondent had assumed the risk. *Engelking v. Spokane, supra.*

The defense of fellow service is not to be found in the evidence. There was no con-association, although there was concert of action. As said in *Hall v. Northwest Lumber Co.,* 61 Wash. 351, 112 Pac. 369:

"But the work was of such a character as to require concert of action on the part of the several workmen engaged in its performance, and could not proceed with any degree

of efficiency without the immediate and direct supervision of someone. When the master, therefore, took the burden upon itself of selecting such a supervisor, it became responsible for the acts of the person so selected, and if he performed his duties negligently, it became responsible to any one injured by such negligent performance. *Anderson v. Globe Nav. Co.,* 57 Wash. 502, 107 Pac. 376; *Engelking v. Spokane,* 59 Wash. 446, 110 Pac. 25; *Olson v. Erickson,* 53 Wash. 458, 102 Pac. 400."

So in the case at bar, there was a lack of proper superintendence when the character of work was such as to demand it. Respondent had no opportunity of knowing whether Thompson was performing his work in a careful manner, and no control over his action. The safety of the act depended primarily upon the manner in which the line was paid out, and the case naturally falls within the rule that the question of fellow service will not be resolved by measuring the rank of the employees but by the character of the act itself. We find that the offending employee was engaged in the performance of the master's duty or charged therewith in reference to the act out of which this controversy arose, and that he is not to be denied a recovery under the rule of fellow servant. *Jackson v. Danaher Lumber Co.,* 53 Wash. 596, 102 Pac. 416.

We think this disposes of all the contentions of appellant excepting the one that the damages allowed are so excessive as to warrant the assumption that they are the result of passion and prejudice. Respondent suffered a compound fracture of the leg, was confined in the hospital from April 6 to September 6, his limb is shortened from one-fourth to three-eighths of an inch, and he suffers rheumatic pains which he says are constant, but which will not, so far as the evidence shows, prevent him from working at his trade. Respondent was able to resume his ordinary occupation some time in January following the accident, when he found employment at the rate of four dollars per day. He was earning five dollars per day when injured. Allowing $1,000 for loss of time, he is

entitled to compensation for pain and suffering, and to cover the permanence of his injury. The recovery as allowed by the court is liberal, even generous, as it seems to us; but a review of the cases convinces us that it is not so disproportionate to the amounts allowed to stand in many of our decisions, considering a similar state of facts, that we would be warranted in substituting our judgment for that of the lower court. While it is not a hard and fast rule, yet the inclination of the court has been generally to follow the judgment of the trial judge in matters of this kind. *Smith v. Seattle Elec. Co.*, 61 Wash. 175, 112 Pac. 87; *Cox v. Wilkeson Coal & Coke Co.*, 61 Wash. 343, 112 Pac. 231; *Nelson v. Western Steel Corp.*, 61 Wash. 672, 112 Pac. 924. The case at bar is somewhat analogous to *Smith v. Hewitt-Lea Lumber Co.*, 55 Wash. 357, 104 Pac. 651, where we allowed $4,000; *Cogswell v. West St. & N. E. Elec. R. Co.*, 5 Wash. 46, 31 Pac. 411, where $5,000 was allowed, and *Mueller v. Washington Water Power Co.*, 56 Wash. 556, 106 Pac. 476, where we allowed $5,250 to stand.

Finding no reversible error in the record, the judgment is affirmed.

Dunbar, C. J., Ellis, Crow, and Morris, JJ., concur.