[No. 10973.    Department One.    September 25, 1913.]

MARCELLUS C. LOWE, *Respondent*, v. OAK POINT PILING & LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. An experienced hook tender, in charge of a logging crew as a vice principal, pulling a log in from the woods with a donkey engine, is guilty of contributory negligence, as a matter of law, where it appears that the log lodged against a windfall, that he readjusted the choker on the log and took a position in front of the windfall, and after an unsuccessful attempt to pull the log over the windfall, it swung towards and struck him, when the engineer failed to stop the engine immediately upon signal; since it was his duty to know the conditions and he assumed a dangerous position when there were abundant places of safety around him.

SAME—FELLOW SERVANTS. A hook tender, in charge of a logging crew as a vice principal, hauling a log from the woods with a donkey engine, cannot recover for injuries sustained through the negligence of the engineer under him, in failing to stop the engine immediately upon signal, since it was his duty as vice principal to know the conditions existing at the engine and among his crew, and when he assumed a dangerous position and gave the signal, he assumed the position of a fellow servant with the engineer.

Appeal from a judgment of the superior court for Cowlitz county, McKenney, J., entered June 25, 1912, upon the ver-

[1]Reported in 135 Pac. 219.

dict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a hook tender in a logging camp. Reversed.

*Hudson, Holt & Harmon* and *A. H. Imus,* for appellant.

*W. P. La Roche, Isham N. Smith,* and *J. E. Stone,* for respondent.

MOUNT, J.—Action for personal injuries. The plaintiff recovered a judgment in the court below. The defendant has appealed.

The facts in this case are as follows: The defendant was engaged in logging operations in Cowlitz county, in this state. On April 15, 1910, the plaintiff was in the employ of the defendant company as a hook tender. As such hook tender, he was in charge of a crew of men in removing logs from the woods to a point called a loading station. A donkey engine was situated near the loading station, and from this donkey engine a line consisting of a steel cable extended to the point in the woods where the logs were to be dragged toward the engine. The distance was between five and six hundred feet. The engine was located upon one side of a hill, and the logs were in a canyon on the opposite side of the hill. It was necessary, therefore, to drag the logs up a hill and then on a down grade to the engine. The logging crew consisted of an engineer, who operated the donkey engine; an assistant known as a chaser, near the engine at the loading station; swampers, whose duty it was to clear roads for the logs; a chaser who was required to follow the log while it was being dragged in; rigging men, whose duty it was to look after the cables and rigging; and a signal boy who was stationed on the top of the hill in sight of the engine and the log. These employees were all under the control of the plaintiff, and were required to obey his orders. He was not authorized to discharge men, but when he was dissatisfied he would so report to the superintendent and the man with whom he was dissatisfied would be investigated or relieved from duty.

The engineer had been in the employ of the company for a period of more than five years. The plaintiff had been in its employ for a period of five years. Both were experienced men in the woods.

On the date above stated, the plaintiff was directing the operation of dragging a log from the woods to the loading station. A few logs had been dragged over the road. The log that was being drawn at the time of the accident was from 25 to 30 feet in length, about three feet in diameter at the larger end, and weighed about three thousand pounds. It was being dragged up the hill. The plaintiff and his chaser were following the log. It became lodged against a smaller log which was buried in the ground. This small log was called a windfall. It lay diagonally across the path of the logging road. When the log which was being dragged to the loading station lodged upon the windfall, a signal was given to the engineer to stop. He did so. The plaintiff and his chaser changed the choker, which was a cable extending around the log which was being dragged, so that the pull upon the log by the engine was intended to raise the log over the windfall. When the choker had been changed, the plaintiff took a position in front of the windfall and to one side of the log which was lodged against it; his chaser stood behind the windfall and to one side of the log. The plaintiff then gave to the signal boy, who was upon the top of the hill, the signal to go ahead. The signal was then communicated to the engineer. At about the time the choker was being readjusted upon the log by the plaintiff, the engineer called the chaser at the loading station to operate the engine while the engineer repaired a glass which was out of order upon the engine. When the signal to go ahead was given, it was communicated to the engine, and the engine was started to drag the log. Three or four pulls were made upon the log before it started. It did not roll upon the windfall as the plaintiff had intended, but swung the windfall out of the ground. As it did so, the plaintiff gave the signal to stop. The signal was

immediately communicated to the engine and the engine was stopped; but not until the windfall had swung around and struck the plaintiff upon the legs, breaking both of them.

It is alleged in the complaint that the engineer was negligent in calling to his assistance an inexperienced man; and also in not stopping the engine immediately upon the signal to stop being given. At the close of the plaintiff's case, the defendant moved the court for a directed verdict, upon the ground that there was no evidence of negligence of the engineer; that the engineer in charge of the engine at the time was a fellow servant of the plaintiff; and that there was no evidence that the man who was called to the engine by the engineer just prior to the time the accident happened was an inexperienced man. The court denied the motion, except that the action was dismissed as to the regular engineer, who was a party defendant in the case. At the close of all the evidence, the defendant asked the court to instruct the jury to render a verdict in favor of the defendant. This motion was also denied. The appellant contends here, as was contended at the trial, that the motion for a directed verdict should have been sustained upon the grounds stated.

There is no evidence worthy of the name that the man who was operating the engine at the time the accident happened was an inexperienced man. There is some evidence to the effect that he had run the engine at times before this; and all the evidence shows that he was competent to run the engine. There was no evidence that he had ever before had an accident, or that he was careless in manipulating the engine, except at this particular time. Nor is there any evidence in the record that the regular engineer was negligent in calling the chaser to run the engine at the time he did. The only possible negligence in the case is the fact that the engine was not stopped immediately upon the giving of the last signal to stop. If the action cannot be maintained upon the theory that it was the duty of the engineer to stop the en-

gine immediately upon the signal being given, it cannot be maintained upon any theory.

But conceding that the engineer in charge of the engine at the time the accident happened was negligent in failing to stop the engine or to stop the progress of the log immediately upon receipt of the signal to stop, we are still clear that the negligence which was the primary cause of the accident was that of the plaintiff himself. He was an experienced woodsman. He had been in the employ of the defendant for a period of five years. He was in charge of the crew that were dragging the logs from the woods. Every member of the crew was required to obey his orders. He was therefore a vice principal. *Keller v. White River Lumber Co.*, 66 Wash. 153, 119 Pac. 4. He knew the condition of the log at the time it caught upon the windfall. He testified that he did not know the length of the windfall because it was buried in the ground. But he knew that the log was caught upon the windfall, and it was his duty, as a representative of the master, to know the character and condition of the windfall. If he had sent his chaser to do as he did, the master would have been liable, because he had sent the chaser into a dangerous place without warning him. But instead of sending his chaser, he took a position in front of the windfall and gave the signal himself. He testifies that three or four pulls were made upon the log by the engine without effect, and there were possibly more. The indications, therefore, were that the engine could not pull the log, or that the windfall must give way. He testified that he supposed the windfall was a short chunk, when in fact it was 25 or 30 feet long. It was his duty to know how long the windfall was, and to know the danger of the place. And when he took a position in front of the windfall and directed the engineer to go ahead, he placed himself in a place of danger of his own volition, and he must necessarily have assumed such risk. His testimony was to the effect that, if after a pull it was apparent that the log would go forward, he could then either get out of the way or signal to stop; and

that he relied upon the fact that his order would be obeyed. He testified that, when he saw the log was swinging the windfall to him, he gave the signal to stop; and if the signal had been obeyed immediately, that he would have escaped the danger. And this may be so. But he must have known that, if the engine was not stopped immediately, he was in an extremely dangerous place when there were abundant places of safety around him.

Conceding, however, that it was the duty of the engineer upon signal to stop the engine immediately, we are further of the opinion that the plaintiff, being in the position in which he was, and the engineer were at most fellow servants working in the same employment. In the case of *Hage v. Luedinghaus,* 60 Wash. 680, 111 Pac. 1041, where the signalman was injured when he was ordered by a vice principal to go into the bight of a logging cable to give a second signal, and where he had an opportunity to choose his place for giving the signal, we held that he could not recover. In that case we said:

"We need not express any opinion upon the question of the fireman's alleged negligence in starting the engine. He and respondent were fellow servants, and therefore the appellants, under the previous holding of this court, were not liable for this alleged negligence of the fireman." [Citing many authorities].

In the case of *Ostroski v. Blumauer Logging Co.,* 74 Wash. 672, 134 Pac. 521, this court held, that where an employee was required to see that a cable ran on a spool and that the road was kept clear of obstructions, and that, where he had performed his duty and had climbed upon a stump to give a signal to go ahead, and the engine was started with such force as to jerk a log against him, the company was liable. But in that case the servant was an inexperienced man. He was not warned or told of the danger. The engineer who was in charge of the engine was inexperienced and incompetent, and the defendant knew that fact. And for these reasons we held that the plaintiff was entitled to recover in that case.

But that case is distinguishable from this by reason both of the inexperience of the servant and failure to warn him of the danger; and also by reason of the fact that the engineer in charge of the engine was entirely inexperienced, which fact the defendant knew; while in this case the plaintiff was an experienced man; he was the vice principal on the work. His engineer was an experienced and capable man who had been employed by the defendant for many years. The plaintiff in this case knew the dangers and, therefore, clearly assumed the risk. We think there is no similarity between these two cases, except the facts relating to the manner in which the accident occurred.

It is argued by the respondent that the hook tender in this case and the engineer were not fellow servants because they were not so closely associated that one could guard against the negligence of the other. But as we have seen above, the evidence is clear to the effect that the engineer was under the control of the hook tender; the engineer was a subordinate to the plaintiff in this case who represented and stood in place of the master. *Melius v. Chicago, M. & P. S. R. Co.*, 71 Wash. 64, 127 Pac. 575. While upon this particular occasion the plaintiff was not within speaking distance and not within sight of the engineer, it was his duty as vice principal to know the conditions existing at the engine and to know the conditions existing among his crew, and to know the dangers incident to the windfall across the path of the log, for he had control thereof; and when he assumed a dangerous place and gave a signal to the engineer as one of the servants of the crew, he assumed the position of a fellow servant with knowledge or notice of the duties, ability and habits of the engineer. Being a vice principal, he was required to know what the principal was required to know, for it was his duty to inform the principal of the character of the service and of the qualifications of each of the employees under his charge; and also to know the dangerous character of the work. In short, he was under obligations to know and protect, not only

himself, but his men, against danger such as caused his injury and of which he was required to take notice.

We are of the opinion, therefore, (1) that the primary cause of the injury was the plaintiff's own negligence; and (2) that the negligence of the engineer was the negligence of a fellow servant in connection with the work. It was the duty of the trial court, therefore, as a matter of law, to direct a nonsuit or a verdict in the case at the close of the plaintiff's evidence.

The judgment is therefore reversed, and the case ordered dismissed.

CROW, C. J., PARKER, GOSE, and CHADWICK, JJ., concur.